(No. 25083.—

Ross W. Swing *et al.* Appellees, *vs.* The American Federation of Labor *et al.* Appellants.

*Opinion filed June 19, 1939.*

STONE, and JONES, JJ., specially concurring.
FARTHING, J., dissenting.

BAILEY STANTON, S. J. STANTON, WM. McK. GLEESON, DANIEL D. CARMELL, and WALTER F. DODD, for appellants.

SAMUEL A. RINELLA, and MYER N. ROSENGARD, for appellees.

Mr. JUSTICE SHAW delivered the opinion of the court:

The plaintiffs in this cause are the owner and all of the employees who are jointly conducting a beauty parlor in the city of Chicago, and the cause of their complaint for an injunction arises from interference with that business by the defendants. There is no question of fact for decision as the cause was disposed of on a motion to strike which admitted all facts well pleaded. In the circuit court the motion to dismiss was sustained and the complaint dismissed for want of equity. The Appellate Court reversed this judgment of the circuit court and granted a certificate of importance, permitting the cause to come before us on this further appeal.

The facts alleged and admitted are substantially as follows: April 30, 1937, four persons claiming to be officials and business agents of Local No. 548-D of the Hairdressers and Cosmetologists Union called upon Swing and demanded that he require all of his employees to join that union, to which none of them belonged, and to which none of them

wished to belong. Swing took a neutral position in the matter, permitted the agents to mingle with his employees, and permitted the employees to do as they pleased. The plaintiffs all agree that there was not then and has not since been any labor difficulty or dispute; the employees were and are satisfied with wages, hours and working conditions.

Notwithstanding these satisfactory conditions and obvious harmony among the plaintiffs, the place of business where they all obtained a livelihood was beset by pickets. On April 30, 1937, male and female pickets appeared on the street in front of the shop carrying large signs with the legend: "This Beauty Shop is Unfair to Organized Labor, Hairdressers and Cosmetologists Union Local 548-D, American Federation of Labor and Chicago Federation of Labor." This was continued during that part of the day and evening when the place was open for business. The complaint charges that the statement on these signs was untrue and malicious, and although, as to malice, this is a conclusion of the pleader, the very fact that the employer and all of his employees joined in this suit sufficiently establishes it.

It is further charged and admitted that these pickets directly, and in some cases forcibly interfered with customers; that one lady leaving the shop was grabbed by the arm and in a threatening manner told that she had better not go in the place again because it was a "scab" shop; that another lady customer was likewise accosted and told that she ought to be shot for going into that "scab" shop. It is also charged and admitted that all of these pickets were strangers to the employer, that none of them were either past or prospective employees in the place of business and that the entire proceeding was designed and intended to force the employer to force his employees to join that particular union, or in the alternative suffer a destruction of his business, with a consequent loss of employment and

means of livelihood to all of the plaintiffs. The Appellate Court succinctly states: "The question presented for determination is whether a labor union, in which none of its members are present, past or expectant employees of an employer, has a right to picket his place of business for the purpose of compelling the employees, who do not wish to join a union, to do so."

The appellants divide their brief into two main contentions, only one of which requires consideration in this opinion. The first point which they urge, that the Illinois Anti-Injunction act of 1925 prohibits the issuance of injunctions in a case such as this, was fully considered and decided by us in *Meadowmoor Dairies, Inc. v. Milk Wagon Drivers' Union of Chicago, No. 753,* 371 Ill. 377. The opinion in that case was filed while the present appeal was pending and in it we held the act of 1925 has no application to cases wherein there is no dispute between employer and employee. In that case all of the arguments presented by the appellants in this case were fully considered and it is now unnecessary for us to repeat what we then said.

The second contention of the appellants concerns the constitutional right to freedom of speech. It is contended by them that section 4 of article 2 of the constitution of Illinois and the fourteenth amendment to the constitution of the United States protect them in their exhibition of the placards and signs derogatory to the plaintiffs' business and intended to destroy it. It is said that for such a wrong, if it be a wrong, or if the statements be untrue, the remedy must be by civil action or by prosecution for criminal libel. The implication of this argument is that the constitutional guaranty of freedom of speech extends so far as to make it a guaranty of freedom to libel; that under this constitutional provision those other provisions guaranteeing due process and equal protection of law must be submerged. Our liberties and means of livelihood are not held by so slender a thread nor a title so tenuous. The right of one group to organize for the advancement of its own ends

is exactly equal to but no greater than the right of other citizens peaceably to pursue their own lawful occupations. In the case before us the public is told that the employer is unfair to organized labor, when the contrary is the fact, it being admitted that he is entirely willing to have his employees organize if they wish. The plaintiffs, both employer and employees, under the equal protection of the law, are entitled freely to pursue their lawful business, yet it is claimed that that business may be destroyed by a libelous boycott in the name of freedom of speech. Under the basic principles of due process a person may not be punished nor his property and business destroyed without a day in court on proper charge and notice with an opportunity to be heard. Yet it is here contended a self-organized group may determine that the plaintiffs may no longer be permitted to earn an honest living by lawful means and forthwith proceed by libelous banners to execute their death sentence.

Appellants insist that the case of *Vulcan Detinning Co. v. St. Clair*, 315 Ill. 40, sustains their position in regard to freedom of speech, but except for certain language in the opinion which might appear favorable to them, it is far from the point. In that case an injunction was issued in connection with a labor controversy restraining the use of certain violence and threats. No appeal was taken from the decree granting this injunction and it became final. Thereafter an article was published in a newspaper and signed by the union which was deemed to be a violation of the injunction previously granted. In this court only two things were held: (1) That no appeal having been taken from the order granting the injunction it became final and we were not at liberty to consider or decide the propriety of its having been issued, and (2) that the publication did not, in fact, violate the injunction. No further discussion of the case is necessary or appropriate.

It is unnecessary for us to decide whether or not a court of equity will enjoin a threatened libel because that kind of a case is not before us. We have here for consideration an

accomplished and continuing libel which is quite a different thing, and we fail to see that it is in any way different from any other form of continuing trespass. To say that a court of equity lies supine before such a wrong where there is obviously no adequate remedy at law is to deny to equity its most fundamental and essential power—the power to right that which is wrong and protect that which must otherwise be unlawfully destroyed.

In the *Meadowmoor case, supra,* we pointed out that all constitutional rights are co-equal and must be harmonized with each other, no one such right being permitted to override or submerge another. What we then said we now adhere to and the rules then announced apply to freedom of speech as well as any other constitutional right. In *People* v. *Lloyd,* 304 Ill. 23, we called attention to the fact that there is a wide difference between freedom of speech and an unbridled license of speech. We now say that freedom of speech does not include freedom to libel or slander. There is no theory upon which the constitution can be shaped into a mantle for wrong and where the right and wrong of the matter are plainly apparent the right must prevail and the wrong be prevented. It is right for men to earn their living by honest means within the law and it is wrong for others either singly or in combination to prevent such honest labor by any unlawful means whether it be force, violence or libel. These principles are self-evident and require neither stress of words nor citation of authority for their support.

We have before us in this case an effort by force to deprive all of the plaintiffs of their means of livelihood and compel them to exist on terms prescribed by others without lawful authority to prescribe them. We have in this record two instances of direct force applied to customers. We have the force of threats and the supposedly powerful force of a boycott to be brought about by signs and banners. A State or nation ceases to be sovereign if it tolerates within

it any force other than its own, and that force must be such as is established by law, directed by the courts, observing the principles of due process and equal protection of the law. To whatever extent these rules are violated we have lawlessness and under such circumstances a court of equity will not pick and choose among the unlawful acts and threats but will enjoin the whole scheme.

We are convinced that the Appellate Court arrived at a correct decision and its judgment is affirmed.

*Judgment affirmed.*

Mr. JUSTICE STONE, specially concurring: I agree with the conclusion reached in this opinion but not with all that is said therein.

Mr. JUSTICE JONES, also specially concurring: I agree with the result reached in this opinion. I cannot agree with the harshness of the criticisms. The facts do not warrant such severity.

Mr. JUSTICE FARTHING, dissenting:

Contrary to the intimation in the majority opinion, this case does not involve the question of restraining violence. Appellants admit that an injunction against violence is proper. The sole issue is whether the circuit court erred in enjoining peaceful picketing. The fact that violence has occurred along with picketing is no reason for enjoining further peaceful picketing. In *Fenske Bros.* v. *Upholsterers Union,* 358 Ill. 239, at pages 259, 260, we said: "We come, now, to a consideration of the action of the chancellor in restraining the acts sanctioned by the statute, and in particular the suggestions of appellants in their answer to the bill. Inasmuch as the act is not unconstitutional, it necessarily follows that the chancellor erred in restraining the doing of any of the things sanctioned therein. In addition to the things enumerated in the statute, the answer sug-

gested that the decree ought to provide that nothing therein contained shall be construed to restrain defendant unions from assigning two of their members or representatives to be, peaceably and without threats or intimidation, upon the public thoroughfares adjacent to the respective places of business of complainants for the purpose of carrying signs or placards announcing the strike and that the complainants are not employing union labor. Evidently it is impracticable for the legislature to prescribe in detail what constitutes peaceable persuasion. The power to determine whether or not acts complained of are within the terms of the statute was properly left in the courts. * * * It may well be said that the carrying of placards containing threats, malicious, abusive or designedly false statements is anything but peaceable persuasion. It may also be said that signs containing no such statements may be carried so offensively or with such annoyance as to amount to intimidation and thus be unlawful. On the other hand, carrying signs merely announcing the strike and that an employer is not employing union labor, with the single purpose of securing accessions to the ranks of a union, may be wholly peaceable persuasion. If not unlawful it may not be. restrained. * * * The mere fact that acts of violence had been previously committed would of itself furnish no justification for enjoining legal acts of peaceable persuasion."

The decision in this case should depend on the answer to two questions: (1) Does the Illinois Anti-Injunction act (Ill. Rev. Stat. 1937, chap. 48, par. 2a) prevent the issuance of an injunction against peaceful picketing where there is no employer-employee relationship? (2) If it does, is it constitutional? There is no doubt about the answer to the second question. The Norris-LaGuardia act, (29 U.S.C.A. secs. 101-115, Supp. 1938,) which specifically provides that no employer-employee relationship need exist, has been upheld. (*Lauf* v. *Shinner Co.* 303 U. S. 323; *New Negro Alliance* v. *Sanitary Grocery,* id. 552.) The Wisconsin statute, which is similar to the Norris-LaGuardia act, has

also been held constitutional. (*Senn* v. *Tile Layers' Union*, 301 U. S. 468.) In the *Senn case* the United States Supreme Court said: "The unions acted, and had the right to act as they did, to protect the interests of their members against the harmful effect upon them of Senn's action. Compare *American Steel Foundries* v. *Tri-City Central Trades Council, supra*, 257 U. S. 184, 208, 209, 42 Sup. Ct. 72, 78, 66 L. ed. 189, 27 A. L. R. 360. Because his action was harmful, the fact that none of Senn's employees was a union member, or sought the union's aid, is immaterial. * * * There is nothing in the Federal constitution which forbids unions from competing with non-union concerns for customers by means of picketing as freely as one merchant competes with another by means of advertisements in the press, by circulars, or by his window display. Each member of the unions, as well as Senn, has the right to strive to earn his living. Senn seeks to do so through the exercise of his individual skill and planning. The union members seek to do so through combination. Earning a living is dependent upon securing work; and securing work is dependent upon public favor. To win the patronage of the public each may strive by legal means. Exercising its police power, Wisconsin has declared that in a labor dispute peaceful picketing and truthful publicity are means legal for unions. It is true that disclosure of the facts of the labor dispute may be annoying to Senn even if the method and means employed in giving the publicity are inherently unobjectionable. But such annoyance, like that often suffered from publicity in other connections, is not an invasion of the liberty guaranteed by the constitution. * * * It is true, also, that disclosure of the facts may prevent Senn from securing jobs which he hoped to get. But a hoped-for job is not property guaranteed by the constitution. And the diversion of it to a competitor is not an invasion of a constitutional right."

The chief dispute centers around the question whether the Illinois Anti-Injunction act applies only to cases where an employer-employee relationship exists. As determinative

of this issue the majority opinion relies alone on *Meadow-moor Dairies Inc.* v. *Milk Wagon Drivers' Union,* 371 Ill. 377. That case held that the Illinois statute was patterned after section 20 of the Clayton act (29 U.S.C.A. sec. 52) which had been construed to be inapplicable where there was no dispute between employer and employee. However, even a casual examination of the two statutes shows a material difference. Section 20 of the Clayton act reads: "That no restraining order or injunction shall be granted by any court of the United States, or a judge or judges thereof, in any case between an employer and employees, or between employers and employees, or between employees, or between persons employed and persons seeking employment, involving or growing out of a dispute concerning terms or conditions of employment," etc. The Illinois act provides: "No restraining order or injunction shall be granted by any court of this State, or by a judge or judges thereof in any case involving or growing out of a dispute concerning terms or conditions of employment, enjoining or restraining any person or persons, either singly or in concert * * * from peaceably and without threats or intimidation being upon any public street, or thoroughfare or highway for the purpose of obtaining or communicating information," etc. The United States Supreme Court, in *Duplex Printing Press Co.* v. *Deering,* 254 U. S. 443, held that the words "in any case between an employer and employees, or between employers and employees, or between employees, or between persons employed and persons seeking employment" required the existence of an employment relationship. It is significant that the Illinois legislature when it enacted the Anti-Injunction act, eleven years after the passage of the Clayton act and four years after the Supreme Court's construction of the quoted words, left them out. There was much dissatisfaction among the labor unions with the restrictive interpretation given section 20 of the Clayton act by the courts. This resulted in the passage of the Norris-LaGuardia act

which remedied the defect of the Clayton act. (See *New Negro Alliance* v. *Sanitary Grocery, supra.*) I assume, as the majority opinion does, that the legislature knew the interpretation given by the United States Supreme Court to the quoted words of section 20 of the Clayton act. The only explanation that can logically be given to the omission of those words from the Illinois act is that the legislature did not intend that it be limited to disputes between the employer and his employees. All of this was ignored in the *Meadowmoor Dairies case, supra.*

As a practical matter there can be no doubt but that a labor dispute exists in the principal case. The refusal of an employer to operate a closed shop tends to lessen the advantages a union offers to its members. If the union is unable to enforce a uniform standard of wages in an industry, the employers who pay higher wages will sooner or later be compelled to lower wages or go out of business. The tendency of a non-union low-wage shop is to depress the wages of an entire industry. Thus the defendants in the principal case are only seeking to maintain the higher standard of wages and working conditions which it is the purpose of the union to give them. Such a purpose should be commended rather than condemned. It is unnecessary to consider the question of free speech which is virtually all the majority opinion covers. Here we have a statute obviously intended by the legislature to prevent the issuance of an injunction in a case such as the one before us. This statute as so construed is doubtless constitutional and should be enforced. While there is no violence, the taking of one customer by the arm, remonstrating with her and another customer for patronizing the place, and the legend on the placards to the effect that the shop was unfair to union labor, are combined and designated as unlawful acts and a libel. Disregarding this sophistry the entirely peaceable picketing should not have been enjoined in this case. Therefore I dissent.