Montgomery Ward and Company, Inc., Appellee, v. United Retail, Wholesale and Department Store Employees of America, C. I. O. et. al., Appellants.

Gen. No. 43,557.

Opinion filed November 20, 1946. Released for publication December 5, 1946.

FRANCIS HEISLER, of Chicago, for appellants.

RUSSELL WHITMAN, of Chicago, *amicus curiae;* WILLIAM H. KING, JR., WALTER F. DODD and MITCHELL DAWSON, all of Chicago, KENNETH A. GREENAWALT and ARTHUR GARFIELD HAYS, both of New York, of counsel.

STUART S. BALL, JOHN A. BARR, FRANCIS D. ROTH and WILLIAM L. LAMEY, all of Chicago, for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

Montgomery Ward & Co., Inc., a corporation, engaged in the nation-wide distribution of general merchandise at retail through mail order houses and retail stores, filed a complaint in the superior court of Cook county seeking an injunction to restrain defendant International Union, defendant Local Union, and various officers and representatives thereof, from acting in concert for the purpose of injuring plaintiff by fostering distrust among, and otherwise alienating, its employees, prospective employees and customers, such injury to be effected by a widespread campaign of untrue statements regarding plaintiff, its policies, officers and supervisory employees. Service upon defendant International Union was successfully attacked and that defendant is no longer in the case. The motion of the other defendants to dismiss the suit was denied and the temporary restraining order prayed by plaintiff issued. Defendants elected to stand on their motion,

claiming the complaint to be insufficient and the granting of injunctive relief to be improper, and raising the constitutional issue of free speech. The temporary order was made final. The instant appeal is prosecuted from the final order. The American Civil Liberties Union obtained leave to file a brief as *Amicus Curiae* in view of the free speech issue involved.

The complaint, summarized, states that plaintiff and its predecessors have been engaged in the retail business for more than 70 years; that it has acquired among its customers, employees, and the public, a reputation for honesty, fairness and integrity, which reputation is invaluable to the plaintiff in the conduct of its business; that it operates nine mail order houses, approximately 650 retail stores and various warehouses and catalogue order offices; that its sales approximate $600,000,000 per year; that it employs at various seasons of the year from 65,000 to 85,000 persons; that it operates various mail order houses and stores therein described; that defendant, International Union, has a constitution; that it acts through its duly elected officers and representatives, in the full exercise of the powers conferred upon it by its constitution; that it invests funds, owns property, enters into contracts, and claims in its own name rights as the collective bargaining representative of employees under chapter 7 of title 29 of the United States Code, known as the National Labor Relations Act; that pursuant to the provisions of its constitution, the International Union has caused to be organized various local unions of its members; that the International Union gives advice and orders to the local unions and assists them in obtaining new members, in conducting strikes and boycotts, in negotiating and making collective bargaining agreements, and in other related activities; that the Local Union is a voluntary unincorporated association of several hundred natural persons, members of the defendant International Union;

that the International Union is a voluntary unincorporated association of several hundred natural persons, having its principal offices in New York City; that the Local Union has its principal offices in Chicago; that the Local Union has a constitution and by-laws; that the Local Union acts through its duly elected and appointed officers and representatives, in the full exercise of the powers conferred on it by its constitution and by-laws; that it invests funds, owns property, enters into contracts, and claims in its own name rights as collective bargaining representative of employees under the National Labor Relations Act; that the individual defendants are officers or members of the executive board of the Local Union; that defendants are sued both individually and in their official capacities; and that the members of the Local Union are so numerous as to make it impracticable or impossible to join them all in the suit, or to bring them all before the court.

The complaint further represents that the Local Union was on August 26, 1940 certified by the National Labor Relations Board as the exclusive bargaining representative of plaintiff's eligible employees in its Schwinn warehouse for the purpose of collective bargaining with respect to rates of pay, hours of employment and other conditions of employment, and has acted as such bargaining representative since then; that the Local Union was on February 28, 1942 certified by the National Labor Relations Board as the exclusive bargaining representative of plaintiff's eligible employees in its Chicago mail order house, its Fashion mail order house and its Chicago retail store for the purpose of collective bargaining with respect to rates of pay, hours of employment and other conditions of employment, and has acted as such bargaining representative since then; that the Local Union has been selected by and was recognized by the plaintiff on October 26, 1942 as the exclusive representative of

plaintiff's eligible employees in its Display Factory at Chicago for the purpose of collective bargaining with respect to rates of pay, hours of employment and other conditions of employment, and has acted as such representative since then; that the Local Union has been selected by and was recognized by plaintiff on August 12, 1942 as the exclusive representative of plaintiff's eligible employees in the Printing Department of its executive offices at Chicago for the purpose of collective bargaining with respect to rates of pay, hours of employment and other conditions of employment, and has acted as such representative since then; that the Local Union has been selected by and was recognized on May 18, 1942 as the exclusive representative of plaintiff's eligible employees in the Maintenance Department of its executive offices at Chicago for the purpose of collective bargaining with respect to rates of pay, hours of employment and other conditions of employment, and has acted as such representative since then; and that the Local Union has been selected by and was recognized by the plaintiff on April 27, 1942 as the exclusive representative of plaintiff's eligible employees in the Photographic Unit of its executive offices at Chicago for the purpose of collective bargaining with respect to rates of pay, hours of employment and other conditions of employment, and has acted as such representative since then; that other local unions were similarly organized in Denver, Kansas City, Mo., Detroit, Jamaica, Long Island and in the vicinity of Albany, Troy and Menands, N. Y.; that the Local Union organized in Denver was certified by the National Labor Relations Board as the exclusive representative of plaintiff's eligible employees in its Denver retail store for the purpose of collective bargaining with respect to rates of pay, hours of employment and other conditions of employment, and has acted since then as such representative; that the Local Union organized in Kansas

City, Mo., has solicited members for itself and the International Union among the eligible employees of plaintiff's Kansas City mail order house; that it claims to be the duly selected exclusive representative of plaintiff's eligible employees in its Kansas City retail store and mail order house for the purpose of collective bargaining; that the Local Union organized at Detroit has solicited members for itself and the International Union among the eligible employees of plaintiff's Detroit store; that the International Union was on November 28, 1941 and January 13, 1942 certified by the National Labor Relations Board as the exclusive representative of plaintiff's eligible employees in each of plaintiff's four Detroit stores for the purpose of collective bargaining, and has since then acted as such representative; that the Local Union at Jamaica, Long Island, has solicited members for itself and the International Union among the eligible employees of that store; that the International Union was on May 15, 1941 certified by the New York State Labor Relations Board as the exclusive bargaining representative of plaintiff's eligible employees in its Jamaica retail store for the purpose of collective bargaining and has acted as such representative since that date; and that the Local Union located in and about Albany, Troy and Menands has solicited members for itself and the International Union among the eligible employees of plaintiff's Albany mail order house and Albany retail store.

The complaint further states that on or about March 8, 1940 the International Union, the Local Union and the individual defendants agreed and conspired to act in concert against plaintiff for the purpose of damaging plaintiff by: (a) causing plaintiff's employees to fear, dislike or distrust the plaintiff and plaintiff's officers and supervisory employees, to become less productive in the performance of the duties of their employment, and to leave plaintiff's employment; (b) causing prospective employees to fear,

dislike or distrust the plaintiff and plaintiff's officers and supervisory employees, and to refrain from seeking or accepting employment with the plaintiff; (c) causing plaintiff's customers and prospective customers to dislike or distrust the plaintiff and plaintiff's officers and supervisory employees, and to refrain from trading with the plaintiff; that the defendants have ever since acted in furtherance of the agreement and conspiracy; that the individual defendants have subsequent to March 8, 1940 entered into, participated in and assisted, and are ''now'' participating in and assisting the conspiracy set forth; that in furtherance of the common design and purpose of the conspiracy the defendants have on many occasions since March 8, 1940, printed, or caused to be printed, or encouraged or assisted in the printing of, articles and stories concerning plaintiff, its officers and supervisory employees, in the official organ of the International Union entitled ''The Retail, Wholesale & Department Store Employee''; that in furtherance of the common design and purpose of the conspiracy, the defendants have periodically since March 8, 1940, printed, or caused to be printed, or encouraged or assisted in the printing of pamphlets, handbills or broadsides entitled ''Spotlight,'' together with other pamphlets, handbills or broadsides not so specifically entitled; that they have distributed, or caused to be distributed, or encouraged or assisted the distribution of, copies of such official organ, pamphlets, handbills or broadsides to the general public and to the employees, prospective employees and customers of plaintiff; that in furtherance of the common design and purpose of the conspiracy the defendants have periodically since March 8, 1940, caused, encouraged or assisted the various local unions to print pamphlets, handbills or broadsides, and have caused, encouraged or assisted the distribution of copies of such pamphlets, handbills or broadsides to the general public and to the employees, prospective

employees and customers of the plaintiff; that in furtherance of the common design and purpose of the conspiracy the defendants have continuously since March 8, 1940, published, or caused to be published in the manner hereinbefore alleged, untrue statements meaning, intended to mean, and necessarily understood by those to whom the statements were published to mean that the plaintiff, its officers and supervisory employees have violated the laws of the United States and of the several states; that plaintiff maintains or has maintained a sweatshop; that plaintiff maintained or has maintained a speed-up system which has injured or destroyed the health of its employees; and that plaintiff has maintained unsafe or unhealthy working conditions.

The complaint further asserts that in furtherance of the common design and purpose of the conspiracy, the defendants have continuously since March 8, 1940, published, or encouraged or assisted others to publish in the manner hereinbefore charged, statements making untrue assertions about the prices charged employees for merchandise sold them by plaintiff; making untrue assertions about the prices charged and the food furnished employees in its cafeterias and about its profits from these cafeterias; making untrue assertions about the rates charged, benefits paid and method of operation of the Employees' Benefit and Group Life Insurance Plans maintained by plaintiff; statements meaning, intended to mean, and necessarily understood to mean that employee contributions to the Employees' Benefit and the Group Life Insurance Plan have been or are diverted to the profit of plaintiff or to the personal remuneration of plaintiff's representatives; statements meaning, intended to mean, and necessarily understood to mean that plaintiff has admitted the justice or reasonableness of union demands which it has refused to grant; statements meaning, or intended to mean and necessarily understood to mean that plain-

tiff has an avowed policy that the interests of its stockholders come first before the welfare of the employees; statements meaning, or intended to mean and necessarily understood to mean, that plaintiff has consistently and deliberately discharged employees with seniority in order to hire new employees at lower wages, or that plaintiff gives no consideration to length of service; statements making untrue assertions about the company's wage history; statements meaning, intended to mean, and necessarily understood to mean, that plaintiff has a practice or policy of paying women lower wages than men for comparable work; statements that plaintiff or its principal officers are opposed to, or have sought to injure or destroy, the form of government established by the Constitution of the United States; statements that plaintiff or its officers have sought to obstruct the prosecution of the war, or have refused to aid in the winning of the war; statements that plaintiff or its principal officers have defied or attacked the constitutionally established government of the United States; statements that plaintiff has sought to use participation in the war effort as an excuse for lowering wages or working conditions; statements that plaintiff has refused to permit a Red Cross mobile blood bank to use plaintiff's premises; statements that plaintiff's management representatives do not keep their promises; that plaintiff's management representatives do not tell the truth; that plaintiff's management and supervisory staff are men and women of low moral character; and statements making untrue assertions as to actions or motives of or words spoken by members of plaintiff's supervisory staff, such assertions being intended to cause and necessarily have the effect of causing, such supervisory employees to lose the respect, liking, and co-operation of plaintiff's other employees.

The complaint further states that pursuant to the common design and purpose of the conspiracy, defend-

ants have continuously since March 8, 1940, published, or caused to be published, or encouraged or assisted others to publish in the manner hereinbefore set forth, statements referring to members of plaintiff's supervisory staff and management in scurrilous and opprobrious terms; that such statements were intended to cause, and necessarily had the effect of causing, such supervisory and management employees to lose the respect, liking and co-operation of plaintiff's other employees; that the statements were intended to imply, and necessarily had the effect of implying, that plaintiff's supervisory and management employees were a party to, or were engaged in, acts of a character similar to those referred to in the statements hereinbefore described; that the statements above described were defamatory; that by the conduct described, defendants have damaged plaintiff's business reputation, good will and trade; that it has necessarily suffered damage by the loss of sales which it would have otherwise made, by loss of prospective employees, and by loss of efficiency in the performance by its employees of the tasks assigned to them; that it has necessarily been subjected to contempt, fear, dislike, or distrust by its employees, prospective employees, customers, and the general public; that it has, in numerous collective bargaining sessions with the defendant unions, and with the individual representatives of the unions, protested the publication of the statements hereinbefore described, produced evidence of the untruth of the statements, and demanded that the publication of the statements be ended, but the defendants have maliciously and wilfully continued to publish such statements; that they intend to continue to publish, or cause or assist or encourage others to publish untrue and opprobrious statements having the same or similar purport as those hereinbefore described; that unless the further distribution of pamphlets, handbills or broadsides described be enjoined, such untrue and

opprobrious statements will continue to be published, and the pamphlets, handbills and broadsides distributed, or caused or encouraged to be distributed by defendants, will continue to include such untrue and opprobrious statements, or statements of similar import; that the defendants will continue to publish such untrue or opprobrious statements unless they are enjoined from continuing to conspire together and act in concert for the purpose of causing plaintiff's employees to fear, dislike or distrust plaintiff, or to become less productive in the performance of the duties of their employment; causing prospective employees to fear, dislike or distrust plaintiff and to refrain from seeking to accept employment with plaintiff; causing plaintiff's customers and prospective customers to dislike or distrust plaintiff and to refrain from trading with plaintiff; that plaintiff has no adequate remedy at law; that the acts of defendants will continue to be numerous and continuous; that unless defendants are enjoined, plaintiff will be required to institute numerous, expensive and frequent actions for damages; that the defendant International Union and the defendant Local Union are unincorporated associations, the members of which are too numerous to be joined in a single action at law; that plaintiff's damages far exceed the probable financial responsibility of defendants; that plaintiff cannot be adequately compensated for the loss of the confidence, liking, and efficiency of its employees; that plaintiff cannot "at this time" secure new employees in sufficient numbers to replace its present employees; that plaintiff cannot be adequately compensated for loss of customer good will; and that the future effect of such damage cannot adequately be ascertained.

Attached to and made a part of the complaint are lengthy exhibits. Exhibit A is headed, "Statements charging or meaning that plaintiff has violated the

law." The titles of the subheads of this exhibit read: "Statements charging or meaning that plaintiff has violated Section 8 (1) of the National Labor Relations Act by interfering with, restraining, or coercing its employees in the exercise of the rights guaranteed them by Section 7 of the Act"; "Statements charging or meaning that plaintiff or its representatives have orally discouraged employees from joining or supporting labor unions"; "Statements charging or meaning that plaintiff has intimidated employees in the exercise of the rights guaranteed by the Act"; "Statements charging or meaning that plaintiff has posted bulletins or circulated literature intended to discourage union membership"; "Statement charging or meaning that plaintiff has interfered with the rights of its employees by espionage"; "Statements charging or meaning that plaintiff interferes or has interfered with the self-organization of its employees by acting to prevent employees from attending union meetings or from engaging in union activities"; "Statements charging or meaning that plaintiff has made wage adjustments or other changes in conditions of employment for the purpose of discouraging union membership"; "Statements charging or meaning that plaintiff instigated or encouraged law suits by one Henry Davis and others against the defendant Local Union, and, that plaintiff did so in order to destroy the defendant Local Union"; "Statements in general terms charging or meaning that plaintiff conducts or has conducted a campaign of resistance to the unionization of its employees"; "Statements charging or meaning that plaintiff has violated Section 8 (2) of the National Labor Relations Act by dominating and by contributing support to a labor organization, or by interfering with the administration of a union"; "Statements charging or meaning that plaintiff has violated Section 8 (3) of the National Labor Relations Act by dis-

criminating against its employees in order to discourage union membership"; "Statements charging or meaning that plaintiff has violated Section 8 (5) of that National Labor Relations Act by failing to bargain collectively in good faith"; "Statements charging or meaning that the plaintiff has violated the Fair Labor Standard Act"; "Statements charging or meaning that plaintiff has violated other laws." Exhibit B is headed, "Statements making untrue assertions concerning working conditions maintained by plaintiff." The titles of the subheads read: "Statements charging or meaning that plaintiff maintains or has maintained a 'sweatshop';" "Statements charging or meaning that plaintiff has maintained a 'Speed-up' system which has injured or destroyed the health of its employees"; "Statements charging or meaning that plaintiff maintained unsafe or unhealthy physical working conditions."

Exhibit C is headed, "Statements making untrue assertions about prices charged employees by the plaintiff or about services provided employees by the plaintiff." The titles of the subheads read: "Statements making untrue assertions about the prices charged employees for merchandise"; "Statements making untrue assertions about the prices charged and the food furnished employees in plaintiff's cafeteria and about plaintiff's profits from the cafeterias"; "Statements making untrue assertions about the rates charged, benefits paid, and method of operation of the Employees Benefit and Group Life Insurance Plans maintained by plaintiff"; "Statements which meant, were intended to mean, and were understood by the readers of them to mean, that employee contributions to the Employees Benefit and Group Life Insurance Plans were diverted to the profit of the plaintiff or the remuneration of plaintiff's representatives." Exhibit D is headed, "Statements making untrue assertions about the policies adopted or followed by the

management of the plaintiff." The titles of the subheads read: "Statements charging or meaning that plaintiff has admitted the justice or reasonableness of union demands which it has refused to grant"; "Statements charging or meaning that plaintiff has an avowed policy that 'stockholders come first' before the welfare of the employees"; "Statements charging or meaning that plaintiff has consistently and deliberately discharged employees with seniority in order to hire new employees at lower wages, or that plaintiff gives no consideration to length of service"; "Statements charging that plaintiff has not made any change in wages or working conditions since the union organized which was not due to union demands"; "Statements making untrue assertions about the company's wage history"; "Statements meaning that plaintiff has a practice or policy of paying women lower wages than men for comparable work."

Exhibit E is headed, "Statements charging or meaning that plaintiff or its management is unpatriotic, treasonable or opposed to the form of government of the United States." The titles of the subheads read: "Statements charging or meaning that plaintiff or its principal officers are opposed to, or have sought to injure or destroy, the form of government established by the Constitution of the United States"; "Statements charging or meaning that plaintiff or its officers have sought to obstruct the prosecution of the war or have refused to aid in the winning of the war"; "Statements charging or meaning that the plaintiff or its principal officers have defied or attacked, the constitutionally established government of the United States"; "Statements charging or meaning that plaintiff has used or has sought to use participation in the war effort as an excuse for lowering wages or working conditions"; "Statements charging plaintiff with refusing to permit a Red Cross mobile unit to use plaintiff's premises." Exhibit F is headed, "Statements

which make untrue assertions about members of plaintiff's supervisory staff and management." The titles of the subheads read: "Statements charging or meaning that plaintiff's management representatives do not keep their promises"; "Statements charging or meaning that plaintiff's management representatives do not tell the truth"; "Statements which charge or mean that members of plaintiff's management and supervisory staff are men or women of low character"; "Statements making untrue assertions as to actions or motives of or words spoken by members of plaintiff's supervisory staff, such assertions being intended to cause such supervisory employees to lose the respect or liking of plaintiff's other employees." Exhibit G is headed, "Statements which refer to members of plaintiff's supervisory staff and management in scurrilous and opprobrious terms." After the filing of the complaint, plaintiff filed an affidavit, attaching additional exhibits J, K, L and M. The latter exhibits quoted the views of the defendants as to the complaint filed by plaintiff. More than 400 of these statements, all alleged to be untrue, are quoted *verbatim* in the exhibits. The dates, places and medium of publication of each of the more than 400 falsehoods are set forth. These allegations set forth the publication of untruths in five cities, over a period of time beginning with March 8, 1940 and continuing to the date the complaint was filed.

The final order and the injunction issued thereunder restrains each of the defendants from (1) "Conspiring together to publish, or to cause to be published, or to assist or encourage any other person or organization to publish, untrue statements concerning the plaintiff, its officers, or its supervisory employees, or concerning the working conditions maintained by the plaintiff, for the purpose of (a) causing plaintiff's employees to fear, dislike or distrust the plaintiff or plaintiff's officers or supervisory employees; or (b) causing pro-

spective employees to fear, dislike or distrust the plaintiff, or plaintiff's officers or supervisory employees; or (c) causing plaintiff's customers or prospective customers to dislike or distrust the plaintiff or plaintiff's officers or supervisory employees; (2) from acting in concert to publish, or to cause to be published, or to assist or encourage any other person or organization to publish untrue statements concerning the plaintiff, its officers, or its supervisory employees, or concerning the working conditions maintained by the plaintiff, which untrue statements have the effect of (a) causing plaintiff's employees to fear, dislike or distrust the plaintiff, or plaintiff's officers or supervisory employees; or (b) causing prospective employees to fear, dislike or distrust the plaintiff, or plaintiff's officers or supervisory employees; or (c) causing plaintiff's customers or prospective customers to dislike or distrust the plaintiff, or plaintiff's officers or supervisory employees.''

██ Defendants' motions to strike and dismiss the complaint, admit facts that are well pleaded. Defendants did not traverse the allegations of ultimate facts made by the plaintiff. Therefore, defendants are not now in a position to challenge such allegations. By their motions, defendants admit that the statements set forth in the exhibits and attributed to them are untrue. In our opinion, the complaint shows that there was a labor dispute between plaintiff and its employees who were represented by defendants. The complaint states that in certain stores or departments the National Labor Relations Board certified the International Union or the Local Union as the exclusive bargaining representative of plaintiff's eligible employees; and that such union acted as such bargaining representative since such certification. The complaint states that in other stores the Local Union was ''recognized'' by plaintiff as the exclusive representative of plaintiff's eligible employees for the purpose of col-

lective bargaining. There is no positive statement in the complaint that in the cases where the union was certified by the National Labor Relations Board that the plaintiff "recognized" the union as the exclusive bargaining representative, unless the allegation that since certification the union acted as bargaining representative can be so construed.

The complaint asserts that in numerous collective bargaining sessions with the union, and the individual defendants as the representatives of the union, it protested the publication of the defamatory statements, produced evidence of the untruth of many such statements, demanded that the publication of such statements be ended, but that defendants maliciously and wilfully continued to publish such statements. From these allegations we assume that plaintiff recognized the various local unions and the individual defendants as having authority to conduct collective bargaining with respect to rates of pay, hours of employment and other conditions of employment. There is no allegation in the complaint that there was not a labor dispute between plaintiff and its employees represented by the unions and the individual defendants. In reading the titles and subtitles of the exhibits, it will be observed that such headings are the assertions by plaintiff as to the meaning of the charges and statements made in the various pamphlets and publications. While by their motions, defendants admit that all the statements made by them are untrue, the headings composed by plaintiff and not attributed to defendants are also taken as true. Our view is that there was a labor dispute and that the dispute concerned plaintiff and its employees' representatives by defendant Local Union and the individual defendants. Thus, in Exhibit A plaintiff asserts that the statements therein recited amounted to charging or meaning that plaintiff had violated the law, that plaintiff had violated sec. 8 of the National Labor Relations Act by interfering with,

restraining or coercing its employees in the exercise of the rights guaranteed by sec. 7 of the Act. A perusal of the headings and subheadings of the exhibits shows that plaintiff understood that the statements alleged to be defamatory, charged the plaintiff with violating some duty it owed to its employees, with violating the National Labor Relations Act, with failing to bargain collectively in good faith, and with making untrue assertions with respect to working conditions, etc. While the motions to dismiss admit the defamatory statements, the assertions of plaintiff in the headings of the exhibits show that the defamatory statements were understood by plaintiff to be made in support of contentions in labor disputes between plaintiff and defendants as bargaining representatives for certain employees of plaintiff. Paragraph 50 of the complaint shows that plaintiff considered that the defamatory statements arose out of the labor relations between plaintiff and defendants in their collective bargaining, for therein plaintiff states that in "numerous collective bargaining sessions with the defendant unions, and with the individual defendants as representatives of said unions," it protested the publication of the statements described, produced evidence of the untruth of many of such statements, and demanded that the publication of such statements be ended, but that defendants maliciously and wilfully continued to publish such statements. A reasonable inference from the allegations of this paragraph is that during the collective bargaining sessions mentioned, defendants refused to accede to the request that the publication of defamatory statements be ended. We find that the complaint and the exhibits show that there was a labor dispute between plaintiff and defendants as the bargaining representatives of certain employees of plaintiff.

Defendants maintain that a court of equity has no jurisdiction to restrain the publication of libel, nor

the power to set itself up as an advance censor of any publication, even though such publication be defamatory; that the injunction order violates State and Federal constitutional rights of free press and speech; and that the publicizing of facts of labor disputes is within constitutional guarantees of free press and speech. Plaintiff replies that the complaint is fully specific in alleging the existence of a conspiracy and concert of action among the defendants; their intent to injure the plaintiff; the resulting publication of more than 400 defamatory statements about plaintiff to thousands of employees and customers; the untruth of these defamations; the continued publication of such untruths after knowledge of their falsity; the intent of the defendants to continue the publication of such untrue defamations; the irreparable injury to the plaintiff, and the lack of any adequate legal remedy. Plaintiff states that by electing to stand upon their motions to strike ànd to dismiss, the defendants have admitted the existence of a conspiracy, the conspiratorial publication of the more than 400 defamatory statements, the untruth of these defamations, the distribution of each to thousands of employees, prospective employees, customers and prospective customers, the continued publication of the defamations after evidence of their untruth had been called to the attention of defendants, the repetition of these defamatory untruths, and the intent of defendants in furtherance of the conspiracy to continue the publication of untrue defamations. Plaintiff asserts that the complaint stated a cause of action for conspiracy. Defendants say that an established labor organization, its members and officers acting in the pursuit of their legitimate interest, may not be charged with conspiracy, even though such trade union activities may be inimical to the interest of the employer whose employees are, or are to be, organized by the union. Plaintiff states that they do not question defendants' right to organize

in order legally to further the legitimate interests of labor, nor the right to free speech in furtherance of lawful objectives. Plaintiff further declares that there is no real issue involved as to defendants' right of free speech; that the injunction does not interfere with the right of free speech; and that it is only the publication of lies, libel and opprobrium which is barred, and this only when done for the purpose of inflicting injury upon plaintiff.

In *Kidd v. Horry,* 28 Fed. 773, Mr. Justice BRADLEY said that the law clearly is that a court of chancery will not interfere by injunction to restrain the publication of a libel. He also held that the existence of malice in publishing a libel or uttering slanderous words cannot make any difference in the jurisdiction of the court. We are of the opinion that the allegations of conspiracy cannot make any difference in the jurisdiction of the court. ''Where a suit is brought against two or more persons for a civil wrong, it is not the conspiracy but the civil wrong resulting in damage which is the gist of the action.'' *Pustelniak v. Vilimas,* 352 Ill. 270, 277; *Bonney v. King,* 201 Ill. 47; *Lasher v. Littell,* 202 Ill. 551; *Dean v. Kirkland,* 301 Ill. App. 495.

''The conspiracy, not being the gravamen or gist of the action, . . . an allegation of the conspiracy does not in and of itself allege a cause of action, and, ordinarily it need not be alleged in order to impose liability for the wrong on all who have conspired to commit it, and, on the other hand, an allegation of conspiracy does not warrant a recovery, if there is no right of action independent of the conspiracy. An allegation of conspiracy becomes important only as it may affect the means and measure of redress. It may be pleaded and proved only in aggravation of the wrong of which plaintiff complains, or for the purpose of enabling him to recover against all the conspirators as joint tort-feasors, or for the purpose of holding

one defendant responsible for the acts of his co-conspirators. Such allegation is a mere matter of inducement leading up to the relation of the acts from which conspiracy may be inferred, and does not change the nature of the action from one purely on the case, subject to all the settled rules of such action, or add anything to its legal force and effect.''

15 C. J. S., Conspiracy, sec. 25. While in the quotation from Corpus Juris Secundum the author was speaking of an action at law for damages, we believe the remarks are applicable to a complaint in chancery for an injunction to restrain publication of a libel, as in the case at bar.

The injunction clearly constitutes a previous restraint on publication. The continued publication of claimed untrue statements in the union handbills, broadsides and pamphlets places defendants in fear and peril of contempt and of fine and imprisonment therefor. The chancellor becomes a judicial censor. The first amendment to the Federal Constitution states that Congress shall make no law ''abridging freedom of speech or of the press.'' Sec. 4, art. II, of our Illinois Constitution, declares:

''Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that liberty; and in all trial for libel, both civil and criminal, the truth, when published with good motives and for justifiable ends, shall be a sufficient defense.''

Freedom of speech and of the press, which are protected by the First Amendment from infringement by Congress, are among the fundamental personal rights and liberties protected by the Fourteenth Amendment from invasion by State action. *Thornhill v. Alabama,* 310 U. S. 88. The protection so afforded is from State and Federal court decrees, as well as from State and Federal legislative enactments. *A. F. of L. v. Swing,*

312 U. S. 321, 325; *Cafeteria Employees Union v. Angelos*, 320 U. S. 293. Our State constitution protects these liberties from infringement by action of the legislature or the courts. Liberty of the press embraces newspapers, periodicals, pamphlets and leaflets, and, in its historic connotation comprehends every sort of publication which affords a vehicle of information and opinion. *Lovell v. City of Griffin*, 303 U. S. 444, 452. In *Grosjean v. American Press Co.*, 297 U. S. 233, the court, after an historical review, said (249):

"This court had occasion in *Near v. Minnesota* [283 U. S.], *supra*, at pp. 713 *et seq.*, to discuss at some length the subject in its general aspect. The conclusion there stated is that the object of the constitutional provisions was to prevent previous restraints on publication; and the court was careful not to limit the protection of the right to any particular way of abridging it. Liberty of the press within the meaning of the constitutional provision, it was broadly said, (p. 716), meant 'principally although not exclusively, immunity from previous restraints or [from] censorship.' "

The right of immunity from previous restraints extends to the false and libelous as well as to the true. *Patterson v. Colorado*, 205 U. S. 454, 462. In *Citizens' Light, Heat & Power Co. v. Montgomery Light & Water Power Co.*, 171 Fed. 553, the court decided that equity has no jurisdiction to enjoin a libel or slander defaming the credit or business standing of a person. The court there said:

"The difficulties in the way of affording such relief are insurmountable. They grow alike out of constitutional provisions, and want of jurisdiction in the court of equity."

Publicizing the facts of a labor dispute is within the constitutional guarantees of free press and speech. The complaint shows that the defendants were acting as a bona fide trade union and representatives

of a trade union. Plaintiff insists that the right of free speech is not absolute and that it is not a license to lie or libel or an excuse for unlawful activity. Plaintiff leans heavily on the case of *Swing v. A. F. of L.*, 372 Ill. 91. This case was reversed by the United States Supreme Court (312 U. S. 321). Plaintiff insists that the statement in the *Swing* case with respect to the power of a court of chancery to enjoin the publication of a threatened libel, was not affected by the reversal in the Federal Supreme Court. After carefully analyzing the opinions, our view is that the pronouncement by the Illinois Supreme Court in that case does not now stand as authority for the proposition that a threatened libel may be enjoined. The right of a labor union to freely publicize the facts of a labor dispute was recognized in *Schuster v. International Ass'n of Machinists*, 293 Ill. App. 177.

The liberty of communication cannot be abridged except under circumstances presenting a clear and present danger of substantive evils. In *Thornhill v. Alabama*, 310 U. S. 88, the court said (105):

"The power and the duty of the State to take adequate steps to preserve the peace and to protect the privacy, the lives, and the property of its residents cannot be doubted. But no clear and present danger of destruction of life or property, or invasion of the right of privacy, or breach of peace can be thought to be inherent in the activities of every person who approaches the premises of an employer and publicizes the facts of a labor dispute involving the latter."

In *Carlson v. California*, 310 U. S. 106, the court said (113):

"The power and duty of the State to take adequate steps to preserve the peace and protect the privacy, the lives, and the property of its residents cannot be doubted. But the ordinance in question here

abridges the liberty of discussion under circumstances presenting no clear and present danger of substantive evils within the allowable area of state control.''

See also *Bridges v. California,* 314 U. S. 252. No ''clear and present danger'' as defined by the authorities, is shown from the facts alleged in the instant complaint. Plaintiff concedes the right of defendants to publish the facts of a labor dispute. When the courts speak of the right to publish the ''facts'' of a labor dispute, they mean the right to publish what the parties claim to be the facts. ''Fact'' and ''Truth'' are often used in common parlance as synonymous. It is frequently difficult for the courts to determine the ''facts'' of a controversy. What are asserted to be the ''facts'' of a labor dispute may or may not be the facts. They are the contentions of the parties as to the facts. The facts are to be determined under circumstances affording an ''opportunity to test the merits of ideas by competition for acceptance in the market of public opinion.'' *Thornhill v. Alabama,* 310 U. S. 88, 105. Ascertaining the facts in any dispute, whether in the field of labor relations or otherwise, usually constitutes one of the principal elements in the controversy.

Plaintiff asserts that it has no adequate remedy at law; that the injury resulting from the destruction of business and good will is irreparable; that the financial irresponsibility of defendants makes any legal remedy inadequate; and that any legal remedy would involve a multiplicity of suits. In the *Citizens' Light, Heat & Power Co.* case, the court said (556):

''Neither a court of equity, nor any other department of government can set up a censorship in advance over such matters, and prevent a person from exercising this constitutional right. He has the right to publish, if he chooses to take the consequences. After he has spoken or written falsely, the criminal

law can punish him, and the civil courts amerce him in damages. That such redress may not be adequate in all cases, and in some cannot be, is quite apparent; but the remedies named are all that the Constitution permits any court to employ against slanders upon a man's credit and business standing. The court cannot go outside of the Constitution, or hold that to be an inadequate remedy which the Constitution has declared to be the sole remedy. The wrongs and injury, which often occur from lack of preventive means to suppress slander, are parts of the price which the people, by their organic law, have declared it is better to pay, than to encounter the evils which might result if the courts were allowed to take the alleged slanderer or libeler by the throat, in advance. It is bootless now, to inquire whether the courts, which first dealt with this matter, did not unduly extend the privileges the constitutional provision intended to secure, by denying all power to deal in advance with the emanation of slander and libel by one private person upon another, where the only purpose of uttering them is to acquire personal gain, by wrongfully and wantonly aspersing a fellow man's reputation and business standing. However that may be, it was the law in England until changed by statute, and is the settled doctrine in this country that a court has no such power."

The *Citizens' Light, Heat & Power Co.* case was not appealed. It was referred to with approval by this court in *Gariepy v. Springer,* 318 Ill. App. 523. We approve the language quoted from the above case as sufficient answer to the contention of plaintiff that it has no adequate remedy at law. Dean POUND analyzed the existing legal remedies pertaining to libel and concluded that: "The libel laws are a sufficient deterrent to the conveyer of insults. Equity courts have refused to become censors of publications." 29 Harv. L. Rev., 640.

A labor union is not a conspiracy. To effect its purpose, individuals must act together. The injunction in the instant case restrains "conspiring together to publish." We agree with defendants that in holding that such orders violate the constitutional guarantees of a free press, the courts have made no distinction between "conspiring to publish" and publication *per se*. To make such a distinction would utterly nullify the constitutional guarantees. To permit a chancellor to assert the power of censorship over publications which are alleged to result from a conspiracy would open the way for the possible muzzling of all publications which are the product of the efforts of two or more individuals. As pointed out by *amicus curiae*, this instrumentality, used in the present case against a labor group, could at some future time, if sustained, be used against employers or groups of employers. The founding fathers realized, as Justice HOLMES aptly said in *Abrams v. United States,* 250 U. S. 616, 630, that "the ultimate good desired is better reached by free trade in ideas," and "the best test of truth is the power of the thought to get itself accepted in the competition of the market." In the *Gariepy* case (318 Ill. App. 523), citing the *Citizens' Light, Heat & Power Co.* case, we said:

". . . the court pointed out that the difficulties in the way of affording injunctive relief against libel and slander are insurmountable, and grow alike out of constitutional provisions and want of jurisdiction in the court of equity;"

For the reasons stated, the decrees of the superior court of Cook county of June 25, 1945 and July 6, 1945 are reversed and the cause is remanded with directions to dismiss the complaint for want of equity.

*Decrees reversed and cause remanded with directions.*

LEWE, P. J., and KILEY, J., concur.