JONES, INC., Plaintiff, v INTERNATIONAL ASSOCIATION OF MACHINISTS, ET, Defendants.

Common Pleas Court, Cuyahoga County.

No. 575,699.   Decided June 16, 1947.

Lody Huml, Cleveland, for plaintiff.
Howard Metzenbaum, Cleveland, for defendants.

## OPINION

By GRIFFIN, J.

Plaintiff herein is the operator of an automobile sales agency and also engaged in the business of repairing, servicing and maintaining automobiles, in two separate buildings located on the south-east and south-west corners of East 69th Street and Euclid Avenue in the City of Cleveland. The defendants are officers and members of an unincorporated association known as a labor union.

The plaintiff has filed suit in equity for an injunction to restrain the defendants from picketing the premises of said plaintiff, and to enjoin violence and unlawful conduct and acts directed against this plaintiff, its customers and employees. The Court finds the material facts, condensed and summarized, are as follows:

Plaintiff is a corporation of which Lloyd P. Jones is the President and General Manager. In January of 1947 the plaintiff had fifteen employees in its mechanical department.

Plaintiff had at different times employed both union and non-union mechanics and operated an open shop without any contract with any union. In the latter part of January agents and representatives of the defendants unions conducted an organizing campaign among plaintiff's employees. Six of the employees signed applications to join the union, and also signed cards authorizing the International Association of Machinists, District No. 54, to represent them and to negotiate and conclude agreements as to wages and working conditions in their behalf.

The evidence discloses that several of these employees attended union meetings and that five were initiated into the organization and given an obligation by an officer thereof. Some of these employees made payments on their initiation fees and dues and one, Carl Schwartz, was at all times thereafter, and until the date of this hearing, a member of said union.

On or about February 14th, 1947, defendant Carl Schwartz, who had been active in the organizing effort, was discharged by plaintiff for alleged inefficiency and poor workmanship. Schwartz contacted the union immediately, and on the same date defendant Hugh McLean, as business representative of the defendant union, called on Lloyd Jones and requested the reinstatement of Schwartz. This request was complied with and Schwartz was returned to work. At the same time McLean showed Jones the cards signed by the employees authorizing union representation, and entered into discussions and negotiations with Jones for the purpose of having the plaintiff enter into a contract with the defendant union which would have the effect of unionizing the shop and the plaintiff's employees. These discussions were continued on the following day and again on February 18th, at which time Lloyd Jones stated that no contract would be signed by the plaintiff because its employees did not want such a contract.

On the previous Friday, February 14th, Jones had informed the employees that a poll would be taken at noon on Friday 15th, to decide, "whether or not they wanted the union." The poll was taken on February 15th at noon and resulted in 13 votes against the union and two for the union. A representative of the union was in attendance at plaintiff's shop at the time of the poll.

On being informed of this on February 18th, 1947, McLean stated that the plaintiff's establishment would be picketed and closed.

On March 3rd, 1947, defendant Carl Schwartz was dis-

charged by plaintiff, the reason given by plaintiff being slackness of work, said reduced business not warranting his further employment. Schwartz reported his discharge to the union officials who thereafter took the position that Schwartz's discharge was due to his earlier labor activity among plaintiff's employees.

Thereafter, about the 12th day of March, 1947, the same Hugh McLean told Mr. Huml, attorney for the plaintiff, that pickets would be out the next morning.

On March 13, 1947, at 7:30 A. M., there were about one hundred pickets milling around the buildings of the plaintiff, this number remaining until 9:00 A. M. and then decreasing to about twenty-five. The picketing was violently conducted; employees of the plaintiff were pushed around in an effort to prevent them from entering the buildings. Two of the employees were struck and assaulted. Windows in front and rear of the building were broken and four tires of an employee's car were punctured. The pickets told customers of the plaintiff not to enter the establishment. Gasoline and laundry trucks would not go through the picket line. Both defendant Schwartz and McLean were in the picket line, the picket line having been established by McLean and being under his supervision.

On March 14th there were about twenty-five pickets. Customers of the plaintiff were again interfered with but there appears to have been no further violence, except threats and showing directed toward the employees as they entered the establishment. On this date, March 14, 1947, plaintiff filed its petition for injunction, hearing was had on the temporary restraining order and an order issued temporarily restraining defendants from all picketing pending final hearing of the case.

On March 15, 1947, two to four pickets were at plaintiff's establishment until shortly after noon when the temporary injunction order was posted on the window, whereupon the pickets left. There appears to have been no further disorder on this date.

The evidence further shows that all of the employees, including those who had previously signed cards authorizing union representation and applications for admittance to the union, went through the picket lines and entered the establishments of plaintiff for the purpose of working on all of the aforesaid dates; that excepting defendant Schwartz none of the employees of defendant, past or present, had any disagreement with the plaintiff in respect to wages or working condi-

tions before the time of the picketing or since; that no dispute existed between the employer and his employees, either past or present, excepting Schwartz, a former employee; that at all times plaintiff had paid each of the employees wages in excess of the union scale, that since the discharge of Schwartz no mechanic has been hired to replace him, and that only one man in the body department has been hired since the picketing. All of the employees, with the exception of this one, now employed by the plaintiff, were in his employ prior to the dates hereinbefore mentioned.

At the time of his discharge Schwartz was the last man hired in the department and therefore on the basis of seniority would be the first to be laid off in the event of slack work.

The evidence further showed that during negotiations with the union representatives, Jones offered to submit the matter in dispute to the United States Conciliation Service, but the union declined.

From these facts two principal questions emerge which may be stated, as follows:

1. Did and does a labor dispute exist between the plaintiff and the defendant union and its agents?

2. Does the existence of the violence found to have taken place during the picketing warrant complete elimination of all picketing or should peaceful, lawful picketing, limited and regulated in scope, be permitted in the future?

In the case of Crosby v Rath, 136 Oh St 352, decided March 6, 1940, the Supreme Court of Ohio decided that a trade dispute does not exist when members of the picketing union are neither employees nor former employees of the picketed company. In the instant case the Court does not attempt to distinguish on a factual basis from the Crosby case, although at least one former employee, Carl Schwartz, was in the picket line. The Court is basing its decision on this point on the more recent decisions in respect thereto made by the United States Supreme Court.

The United States Supreme Court, beginning in 1937, by its decision in Senn v The Tile Layers Protection Union, 301 U. S. 468, and a series of holdings since that time, has identified picketing with free speech provisions of the Federal Constitution in such a manner and to such an extent as to limit the powers of either the state legislatures or the state judiciary to impair the rights granted under the 14th amendment of the Federal Constitution. By this identification the U. S. Supreme Court has assumed the power and right to define the limits within which picketing may be practiced. Where, prior

to the free speech-picketing concept, state courts and legislatures had been considered to have the power to mark out these limitations, by this linking of picketing and free speech the Supreme Court has made it a federal question.

A. F. of L. v Swing, 312 U. S. 321 (1941):

"The constitutional guarantee of freedom of discussion is infringed by the common law policy of a State limiting peaceful picketing by labor unions to cases in which the controversy is between the employer and his own employees.. Pp. 323, 325. 372 Ill. 91; 22 N. E. 2d 857, reversed."

Bakery Drivers Local v Wohl, 315 U. S. 769 (1942):

"The right of free speech does not depend in such a case on whether or not a 'labor dispute,' as defined by the state statutes, is involved. P. 774."

Cafeteria Employees Union, Local 302, et al., v Angelos, 320 U. S. 393 (1943):

"A State cannot, by drawing the circle of economic competition between employers and workers so small as to contain only an employer and those directly employed by him excluded workmen in a particular industry from presenting their case to the public in a peaceful way. P. 296."

In view of the decisions in the Swing, Wohl and Angelos cases, cited above, it is the opinion of this Court that the rule announced by the Crosby case, to-wit, that a labor dispute did not exist in the absence of disagreement between an employer and its employees is not longer valid and that the Crosby case has been superseded by these latter decided U. S. Supreme Court cases in this respect.

The fact that the decision in both the Wohl and Angelos cases was with respect to limitations by statute while the limitation in the Crosby case is by court decision, affords no real distinction. The principle is the same in either case. The U. S. Supreme Court has decided that the right to picket under constitutional guarantee of free speech may not be prescribed in this manner.

See also A. F. of L. v Swing, supra.

For a discussion of the history and development of the picketing-free speech doctrine and related problems, together with collected cases, see Labor Disputes and Collective Bar-

gaining by Ludwig Teller, 1946 Cumulative Supplement, Section 136, 36 Harvard Law Review.

The purpose of the picketing of the employer's business establishment in the instant case was to induce the employer to sign a contract with the union, unionize the employees, and to further the interest of organized labor. That this is a lawful purpose and may be pursued by lawful, peaceful picketing in the event of a labor dispute growing out the endeavors to accomplish this end, is supported by abundant authority, both in Ohio and Federal decisions.

What action should the Court take, if the purpose and end sought is lawful but the picketing, which would be permissible, if peaceful and free from violence, was in fact accompanied by violence? Can or should the Court issue a permanent injunction, thereby not only restraining the improper conduct but also depriving the enjoined persons from exercising the rights they would otherwise enjoy under the constitutional right of free speech, to-wit, the right to picket peacefully in a lawful manner? That the Court may do this in a proper case, where the facts warrant such action, for the purpose of disciplining and punishing offenders and to protect the right of employer to peaceful enjoyment of his property is still the law in the opinion of this Court. The test to be applied in order to determine whether the facts in a particular case do warrant such action are set forth in Drivers Union v Meadowmoor Co., 312 U. S. 275.

The defendants in the instant case have been restrained for the past three months from any picketing whatsoever by temporary order of this Court pending this final hearing. This order has been obeyed and so far as this Court has been informed no acts of picketing, violence or coercion have occurred during this period. This Court assumes that such orders as it makes today will also be obeyed.

Applying the tests of the Meadowmoor case, this Court does not believe that peaceful, lawful picketing, limited as to individuals participating, and further regulated as a manner of expressing their views, at this remote date from the earlier violence, will have the effect of causing whatever momentum of fear may have been caused by the past violence to reach over into the peaceful picketing of the future.

A complete denial of the right to lawful and peaceful picketing at this time would necessarily be based on an assumed fear of future coercion flowing from the past violence and the assumption that peaceful picketing at this time would have coercive and intimidating effect because of the violence

three months ago. The Court believes that peaceful picketing under limitations and regulations imposed by the Court will adequately protect the rights of all parties involved without invading or forfeiting the rights of any of them.

Therefore an order will issue enjoining the picketing of the buildings of the plaintiff on the south-east and south-west corners of Euclid and East 69th Street, Cleveland, Ohio, except in the following respects:

The defendant union is entitled to have two pickets at each of these buildings. Said pickets may inform the public either orally or by handbills, or signs, of the dispute between the defendant union and the plaintiff. This information shall be truthfully stated. Said pickets shall do nothing to block the entrances or interfere with the ingress or egress of persons using said entrances. Said pickets shall keep moving and at no time shall stand in front of any of said entrances or move in a manner so that such entrances will be blocked. Said pickets have no right to prevent, interfere with or make it difficult for employees, prospective patrons, or other persons to freely use the entrances and are hereby enjoined therefrom. Said pickets shall not create any disorder in, at, or near the establishments and shall not threaten, molest or interfere with the plaintiff, its officers or employees or any of the persons doing business at the plaintiff's, but may approach said persons for the purpose of passing handbills. Said pickets are free to enter into a conversation with any and all persons who are willing to enter into a conversation with them, but in any conversation in relation to the issue in this case or the dispute between the parties the pickets are to limit themselves to a truthful discussion of the facts. None of the defendants herein shall do anything to intimidate or coerce the plaintiff or any of its employees or put them in fear of bodily harm or injury, nor shall they do any act tending to coerce plaintiff's customers to refuse to patronize said plaintiff. No persons representing defendants other then the exceptions mentioned above shall do any picketing or be permitted about or in the vicinity of plaintiff's premises. None of the defendants other than the pickets herein described shall congregate or gather about in the vicinity of plaintiff's premises. Said pickets are to do nothing that will interfere with the peaceful and uninterrupted delivery of merchandise, supplies or services to the plaintiff's establishment except that they shall have the right to advise anyone about to make such delivery that the establishment is being picketed in a labor dispute.

It is further ordered that this decree of injunction shall

be effective from and after the date of the signing of a Journal Entry as to each and all of the defendants now before this Court, and as to all other persons to whom notice thereof shall come from and after the date of said notice, and shall remain in full force and effect, subject to the continuing jurisdiction of this Court of Common Pleas.

It is further ordered that the defendants shall pay the costs of this proceeding.

Journal Entry may be drawn in accordance with the provisions herein set forth. Exceptions are allowed to all proper parties.