Bitzer Motor Company, Plaintiff-Appellee, v. Local 604, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers, a Voluntary Unincorporated Association, and William Delaney, Jerry W. Turner, Glenn Six, and Dale Ferris, Defendants-Appellants.

Term No. 52–O–21.

 Opinion

filed January 30, 1953. Released for publication March 4, 1953.

JONES, OTTESEN & FLEMING, of Belleville, for appellants.

JOSEPH H. GOLDENHERSH, and R. E. COSTELLO, both of East St. Louis, for appellee.

MR. PRESIDING JUSTICE BARDENS delivered the opinion of the court.

Plaintiff in this case filed his complaint asking for a temporary and a permanent injunction against defendants restraining them from picketing the place of business of the plaintiff. After the complaint was filed notice was given and answer filed and hearing had on the granting of the temporary injunction, after which the court granted the temporary injunction as prayed.

The defendants filed this appeal and on the appeal urged two principal objections to the injunction. The first is that there was a labor dispute and the injunction violated the Illinois Anti-Injunction Statute, chapter 48, paragraph 2a of Illinois Revised Statutes, 1951 [Jones Ill. Stats. Ann. 106.21], passed and approved in 1925. The second contention is that, there being no charge that the picketing was anything but peaceful and no evidence that there was any intimidation or violence, thus the defendants have been denied their

right of free speech under the Fourteenth Amendment to the Federal Constitution.

Plaintiff is an Illinois corporation engaged in the business of selling automobiles in the city of East St. Louis. It employs four salesmen. The salesmen, up until shortly before this controversy, did not belong to a union, but plaintiff did employ mechanics and service-station workmen who belonged to unions. Other than Delaney the salesmen of plaintiff expressed an unwillingness to join the union. Delaney was employed by the plaintiff in about May of 1950 and as an apprentice salesman he qualified under the G. I. Bill of Rights and was thereafter paid two hundred dollars a month as base pay. Delaney's G. I. rights expired in May of 1952, after which Mr. Earl Bitzer, president of plaintiff, offered to put him on the same salary and commission scale as he paid his other salesmen. Delaney was not satisfied with this, whereupon Mr. Bitzer told him that that was all he could pay and that if he was not satisfied with that, he should seek employment elsewhere. Delaney went on working for some time and received pay according to the proposition outlined by Mr. Bitzer. On May 22 picketing started and it developed that Mr. Bitzer on that day first found out that Delaney belonged to the defendant union. On May 23 Bitzer learned of a transaction by Delaney, had several months prior, where Delaney sent a customer to another dealer and received a commission out of a sale made by the other dealer to the customer and thereupon plaintiff, by letter, discharged defendant Delaney and paid him up in full to that date. The picketing continued for some time thereafter and Mr. Bitzer then had a conference with some of the defendants which did not result in stopping the picketing. As a result of picketing, plaintiff's mechanics and service-station employees stayed away from work and sup-

pliers and others refused deliveries and services. Plaintiff showed irreparable injury. Thereafter, on July 17, 1952, the instant complaint was filed.

Turning now to the first contention of the defendants that the Illinois Injunction Act applies, they contend that there was a dispute between the employer and the defendant Delaney, an employee, and therefore the case comes under the terms of the Illinois Anti-Injunction Act which reads as follows:

"No restraining order or injunction shall be granted by any court of this State, or by a judge or the judges thereof in any case involving or growing out of a dispute concerning terms or conditions of employment, enjoining or restraining any person or persons, either singly or in concert, from terminating any relation of employment or from ceasing to perform any work or labor, or from peaceably and without threats or intimidation recommending, advising, or persuading others so to do; or from peaceably and without threats or intimidation being upon any public street, or thoroughfare or highway for the purpose of obtaining or communicating information, or to peaceably and without threats or intimidation persuade any person or persons to work or to abstain from working, or to employ or to peaceably and without threats or intimidation cease to employ any party to a labor dispute, or to recommend, advise, or persuade others so to do."

We have already given the substance of plaintiff's version of the cause for the discharge of Delaney. Delaney's version was substantially as follows, to-wit: Delaney had sold a customer named Horner a truck which was to have a body put upon it; the Bitzer Company had the body mounted on the truck and when the customer Horner saw the truck with body mounted he was dissatisfied and refused to go through with the

deal; that Delaney reported this to his immediate superior in the company who then told Delaney to give Horner the fifty-dollar deposit back; and that thereupon Delaney got in touch with the salesman of another concern and this other concern made a sale to Horner and Delaney received eighteen dollars from the other company. Bitzer testified that this transaction was a violation of the plaintiff company's rules and Delaney testified that he did not know that it violated any rule of the company.

 The testimony with regard to such discharge thus became a controverted question of fact and law and it was apparently resolved by the lower court in plaintiff's favor. In our opinion, such a finding was not against the manifest weight of the evidence and therefore we must assume that Delaney was legally discharged as an employee prior to the commencement of this suit.

 It is admitted that no other member of the defendant union was an employee of the plaintiff company; thus the Illinois statute is not applicable to the case at bar because our Supreme Court has held that this statute is applicable only to a dispute between the employer and his own employees. *Milk Wagon Drivers' Union v. Meadowmoor Dairies,* 371 Ill. 377. This construction is final and binding upon us as well as the U. S. Supreme Court because it pertains to the construction of an Illinois statute. See *Oklahoma Tax Commission v. Texas Co.,* 336 U. S. 342, 93 L. Ed. 721, 731, 69 S. Ct. 561.

 The second contention of the defendants is that the picketing was peaceful and free from intimidation and therefore under authority of a number of cases, which we will later cite, the picketing is protected by the guarantee of free speech and cannot be enjoined. With this contention we cannot agree be-

cause it omits the element of the purpose for which the picketing is being conducted. The correct rule concerning picketing is laid down in the case of *Hughes v. Superior Court of California*, 339 U. S. 460, 94 L. Ed. 985, 70 S. Ct. 718, where the court points out that the purpose of the picketing may be inquired into by state courts. If the purpose of the picketing does not give rise to its disallowance, then peaceful picketing comes under the constitutional guarantee of free speech. If the purpose is one that cannot receive sanction, picketing may be enjoined even if peaceful. This principle is fully explored by the court in the *Hughes* case where the following language is used: ''Industrial picketing 'is more than free speech, since it involves patrol of a particular locality and since the very presence of a picket line may induce action of one kind or another, quite irrespective of the nature of the ideas which are being disseminated.' Mr. Justice Douglas, joined by Black and Murphy, JJ., concurring, in Bakery & Pastry Drivers & Helpers Local 802 of International Brotherhood of Teamsters v. Wohl, 315 U. S. 769, 775, 776; 86 L. ed., 1178, 1183, 1184; 62 S. Ct. 816. . . . The loyalties and responses evoked and exacted by picket lines are unlike those flowing from appeals by printed word. . . . A State may constitutionally permit picketing despite the ingredients in it that differentiate it from speech in its ordinary context . . . and we have found that because of its element of communication picketing under some circumstances finds sanction in the Fourteenth Amendment. . . . However general or loose the language of opinions, the specific situations have controlled decision. It has been amply recognized that picketing, not being the equivalent of speech as a matter of fact, is not its inevitable legal equivalent. Picketing is not beyond the control of a State if the manner in which picketing is con-

ducted or the purpose which it seeks to effectuate gives grounds for its disallowance.'' In the *Hughes* case the California court had issued an injunction against picketing which it found was carried on solely for the purpose of compelling an owner to hire negro employees in proportion to the number of its then negro customers and the U. S. Supreme Court upheld the injunction. See also *Building Service Employees International Union, Local 262 v. Gazzam*, 339 U. S. 532, 94 L. Ed. 1045, 70 S. Ct. 784, 788 where an injunction by the state court of Washington against picketing was sustained as not in violation of the right of free speech. The injunction was based upon a finding that the union was seeking to compel an employer to violate the public policy of the State as expressed in its statute providing that employees shall be free from coercion, interference or restraint of employers in designation of their representatives. The U. S. Supreme Court affirmed and used the following language: ''To judge the wisdom of such policy is not for us; ours is but to determine whether a restraint of picketing in reliance on the policy is an unwarranted encroachment upon rights protected from state abridgment by the Fourteenth Amendment . . . An adequate basis for the instant decree is the unlawful objective of the picketing, namely, coercion by the employer of the employee's selection of a bargaining representative.''

Turning to the case at bar, we find that the plaintiff has not alleged any violence or intimidation, but relies solely upon the contention that the picketing was for an illegal purpose. Plaintiff testified that some time after the picketing had commenced he met with union representatives and that in that meeting the union representatives made no complaint of any grievances whatsoever, but did state to the plaintiff if he would just sign up, then everything would be all right

and the picketing would cease immediately. One of the defendants denied that this statement was made. Defendants, on the hearing, did not state the purpose or purposes of the picketing or that any grievance or demand was made. One of the defendants stated that the union had jurisdiction in St. Clair county, of which East St. Louis is a part, to organize a salesmen and automobile union and that that witness had been engaged in that business for the past several months. ·The evidence shows that although the salesmen employees did not desire to join defendant union, plaintiff was willing to submit the question of a choice of a bargaining representative to an election.

 From the above it can be seen that an allowable question of fact was presented to the trial court as to whether or not the sole purpose of the picketing was the coercing of the plaintiff company into signing a contract with the defendant union. In order to grant the temporary injunction, the lower court obviously found the weight of the evidence on this question in plaintiff's favor.

 We are thus called upon to determine whether coercion by a union of an employer for the sole purpose of inducing him to sign a contract with that union when his employees have expressed a desire not to belong to that union is against public policy. Our legislature has not spoken on this subject as have those of some of the States. See note in 162 A. L. R. 1438. But it is immaterial that a state's public policy is expressed by the judicial rather than legislative branch. *Hughes v. Superior Court of California,* 339 U. S. 460, 466 and 467, 94 L. Ed. 985, 993, 70 S. Ct. 718. The public interest as well as a respect for the rights of the individual demands that a workman should be free to join a union or not to join and that workmen should be allowed to select their own bargaining representatives

without interference, restraint or coercion from their employer. Experience has taught that enforcement of these rights eliminates some of the tensions that cause disputes. These rights are codified in the National Labor Relations Act, 29 U. S. C. A., paragraphs 157 and 158, and thus express a national policy. The *Gazzam* case says this public policy is ''an important and widely accepted one.'' Any attempt to coerce employers to take steps in violation of these rights is, in our opinion, against public policy.

A like conclusion has been recently adopted by the courts in various other States. In *Standard Grocer Co. v. Local No. 406 of A. F. of L.*, 321 Mich. 276, 32 N. W. (2d) 519, *Katz Drug Co. v. Kavner* (Mo.), 249 S. W. (2d) 166 (May, 1952), and *Wolferman, Inc. v. Root*, 356 Mo. 976, 204 S. W. (2d) 733, the courts held that peaceful picketing not participated in by the picketed employer's employees and directed toward the objective of a closed-shop agreement was contrary to law and could be restrained. In the *Wolferman* case the *Swing* case was discussed by the court along with other cases raising the identification of peaceful picketing with freedom of speech. In this connection the court said:

''We are of the opinion that none of the cases relied upon by the defendants, which we have already discussed, is authority for any principle that picketing by workmen in concert to persuade or induce an employer to do an unlawful act, one condemned by statute as an unfair labor practice and contrary to the defined public policy of the Commonwealth and of the nation, is permissible under the constitutional guaranty of freedom of speech, or otherwise.''

The United States Supreme Court denied certiorari in 68 Sup. Ct. 608.

Defendants place reliance on the cases of *Milk Wagon Drivers Union v. Meadowmoor Dairies,* 312 U. S. 287, 85 L. Ed. 836, 61 S. Ct. 552, 132 A. L. R. 1200; *American Federation of Labor v. Swing,* 312 U. S. 321, 85 L. Ed. 855, 61 S. Ct. 568; and *Ellingsen v. Milk Wagon Drivers Union of Chicago, Local 753,* 377 Ill. 76, to support their contention that if picketing is peaceful an injunction is forbidden as an interference with the right of free speech. These cases furnish no authority that peaceful picketing may be employed to coerce an employer to do an unlawful act. In fact, they do not pass upon the question of legality of the purpose of the picketing at all. The *Meadowmoor* case upheld the injunction issued by the state court on the ground that the proven violence was of such nature that the court was justified in concluding it would continue unless all picketing ceased. The *Swing* case struck down the state court's assumption that an absence of employer-employee relationship justified the issuance of injunction and held that the right of free speech could not be denied on that narrow ground only. The *Ellingsen* case held that the acts of violence proven were not of such a nature as to set up fear of their continuance in the future and therefore did not justify the restraint of all picketing. The court found that picketing was not set in a background of violence and that there was no good reason to fear that violence would recur and under those circumstances found that the constitutional guaranty of free speech was violated. In reversing the lower court, the opinion took note of the language of the *Meadowmoor* case stating that the right to free speech could not be forfeited because of disassociated acts of past violence.

 A review of the many cases on the subject of the restraint of picketing leads to the following conclusions: If picketing is employed for a purpose that

293

is lawful and if it is peaceful or even if there are some disassociated acts of violence that do not justify a conclusion that they will be further repeated, then an injunction should be denied. If the court finds that the purpose of the picketing is illegal, because it violates either statute or public policy, then an injunction is proper even though the picketing is found to be carried on in a peaceful manner. The trial court, from the pleadings and the evidence, if any, must determine these questions, and when it does so, its findings should not be disturbed unless manifestly wrong. In this respect the trial court findings should be entitled to the same weight as in any other type of case.

 We again revert to the first contention made by defendants, concerning the applicability of the Illinois Anti-Injunction Act. The constitutionality of this Act under the Illinois Constitution was challenged and decided in the case of *Fenske Bros., Inc. v. Upholsterers' Union of North America,* 358 Ill. 239. The court held the Act constitutional and in meeting the challenge that the Act violated section 12 of article 6 of the Constitution which provides "The circuit court shall have original jurisdiction over all causes in law and equity," the court disposed of this contention in the following language:

"It is to be noticed, however, that the statute in controversy does not deprive circuit courts of jurisdiction to restrain any unlawful act, nor of jurisdiction to determine whether or not any act complained of is legal or illegal. So far as the statute is concerned, circuit courts have the same jurisdiction in labor disputes they have always had, for it cannot be said that they ever had the power, by the constitution or otherwise, to prevent or penalize the performance of lawful acts concerning which no cause of action existed.

Whenever the doing of an act is unlawful it gives rise to a cause of action, but it is inconceivable that any cause of.action, legal or equitable, as contemplated by the constitutional provision, exists to restrain the performance of a lawful act. The fact that an act is lawful indicates that it may be performed. Whenever the performance of any act otherwise legal entails a liability or a penalty, or becomes preventable for any reason, it ceases to be a lawful act and a cause of action exists in favor of the person aggrieved. Therefore persuasion, when so annoying as to become coercive, amounts to intimidation and is unlawful. It is not to be presumed that the legislature contemplated legalizing peaceable persuasion in furtherance of any unlawful strike or actionable conspiracy, because by the same token the peaceable acts would become unlawful."

It can thus be seen that if the purpose of an act is such that the act should not be permitted, the Illinois Anti-Injunction statute cannot afford protection therefor.
We are here confronted with the issuance of a temporary injunction and both parties will have opportunity to be heard on the question of the issuance of a permanent injunction. They then will have full opportunity to present evidence concerning the purpose or purposes for which the picketing was being conducted. What we have said in this opinion should not foreclose a full consideration by the court on further hearing of this question.

For the reasons indicated, the order of the lower court issuing the temporary injunction is affirmed.

*Order affirmed.*

CULBERTSON and SCHEINEMAN, JJ., concur.