Northern Illinois Coal Corporation and Seminole Coal Corporation, Appellees, v. Joseph Langmeyer, Highway Commissioner of Lenzburg Township, St. Clair County, Appellant.

Term No. 49017.

Opinion filed January 19, 1950. Opinion modified and rehearing denied May 13, 1950. Released for publication May 16, 1950.

F. E. Merrills, of Belleville, for appellant.

Dan McGlynn and Kramer, Campbell, Costello & Wiechert, all of East St. Louis, for appellees; Kirkland, Fleming, Green, Martin & Ellis, of Chicago, and Root & Hoffman, of counsel.

MR. PRESIDING JUSTICE BARDENS delivered the opinion of the court.

The Northern Illinois Coal Corporation, an Illinois corporation, and the Seminole Coal Corporation, an Illinois corporation, plaintiffs appellees, on July 19, 1949, filed their verified complaint in the circuit court of St. Clair county, Illinois, requesting that a permanent injunction issue against Joseph Langmeyer, highway commissioner of Lenzburg township, St. Clair county, defendant appellant, and further requesting that said appellant be restrained during the pendency of this action.

Appellees' complaint states in substance as follows:

That the Northern Illinois Coal Corporation and its wholly owned subsidiary, the Seminole Coal Corporation, are engaged in the business of open cut or strip mining of coal and that the said Northern Illinois Coal Corporation owns or controls a coal field of some 1,000 acres located in said Lenzburg township, St. Clair county, Illinois, which field is being mined by the Seminole Coal Corporation in pursuance to an operating contract with the Northern Illinois Coal Corporation.

That two township roads of said Lenzburg township, one known as the Golden Rule Road and running in a general east-west direction, and the other known as the East Dutch Hill Road and running in a general north-south direction, intersect; that by their intersection these roads form four quadrants and that plaintiffs' land lies within the southeast, southwest, and northwest quadrants so formed; that the greater portion of plaintiffs' lands are located within the southeast and northwest quadrants with only a small area situated within the southwest quadrant.

That plaintiffs have over $1,500,000 invested in real estate, machinery, and equipment and have over $1,000,000 of this sum invested in an office building, tipple, washing and preparation plant, railroad siding,

repair shops, and miscellaneous equipment, all of which is located in the southeast quadrant above described. That plaintiffs have nearly completed the mining of coal located in the southeast quadrant and that to mine their coal situated in the northwest quadrant it is necessary to move certain excavating machinery to the northwest quadrant and to construct a haulage road from the northwest quadrant to the plant and equipment located in the southeast quadrant. That, therefor, it is necessary to cross the two township roads, the crossing on the East Dutch Hill Road to be made south of the intersection, and on the Golden Rule Road, west of the intersection. That the Northern Illinois Coal Corporation owns the fee in lands abutting the two said roads at the point of crossing and also owns the fee of said roads subject to an easement of the public for highway purposes.

Certain exhibits attached to and made a part of the complaint set out that the machinery and equipment to be moved by the plaintiffs consists of one Marion 5480 stripping shovel, one Marion 5480 drag line, both on caterpillars, one Marion 4121 coal shovel, and one Marion 111–M drag line. That a submarine electrical cable must be constructed in order to operate excavating equipment. That after the plaintiffs commence to remove coal they will make between 100 and 160 crossings of said roads per day with Mack coal hauling trucks which weigh approximately thirty tons empty and eighty tons loaded. These exhibits also disclose that the defendant highway commissioner insisted that the plaintiffs could not make any crossings over said highways with vehicles which exceed the maximum size and weight as specified by law without first receiving permission from the defendant.

The complaint then sets up the threats of the defendant to cause the arrest of plaintiffs, their officers, agents, and employees who attempt to cross over said

highways with vehicles or equipment of excess size or weight.

The complaint also shows that plaintiffs offered to secure a bond or make a deposit of up to $2,000 in escrow to guarantee the maintenance of said cross-overs in good and safe condition.

The complaint further alleges that unless plaintiffs are permitted unmolested by the defendant to make crossings over said township roads as proposed, they will be unable to mine the premises in the northwest quadrant and will be deprived of all means of egress and ingress thereto for the purpose of mining coal and will suffer great and irreparable injury, will be unable to meet their commitments for the sale of coal, that the injury will be recurrent, continuous, and irreparable, and that defendant is unable to respond to plaintiffs in damages should any be recovered against him.

On the 15th day of July 1949, the defendant filed a complaint for injunction in the circuit court of St. Clair county against plaintiffs appellees in which suit the defendant sought a temporary writ of injunction and a permanent writ restraining appellees from moving their vehicles or combinations of vehicles, equipment, draglines, and so forth, across said roads.

On the 19th day of July 1949, a temporary writ of injunction was issued without notice and served on appellant, enjoining and restraining him until the further order of the court, in manner of form as prayed by said complaint. Plaintiffs were required to furnish a $10,000 bond conditioned that the plaintiffs pay the defendant or his successors all damages which may be sustained by him in his official capacity and all costs and damages that might be awarded in the event that the temporary injunction was dissolved. Friday, July 22, 1949, after notice to opposing counsel, appellant moved that said order granting the temporary writ of

injunction be vacated, which motion was denied on July 25, 1949. Appellant now asks that this court review the action of the lower court.

The appellant assigns error of the trial court in granting the temporary injunction and in overruling his motion to vacate the same. He raises a number of questions in his brief but his argument is almost entirely directed to the contention that appellees' actions are governed by paragraphs 124, 131, and 133 of an Act entitled, ''An Act in Relation to the Regulation of Traffic'' (Ill. Rev. Stat. 1947, ch. 95½, pars. 221, 228 and 230 [Jones Ill. Stats. Ann. 85.253, 85.260, 85.262]); that therefor they must obtain special permits from him as township highway commissioner, a local authority. If he refuses to grant their permits, then their proper remedy is a writ of mandamus and not that of an injunction. The appellant also points out in his brief that a temporary injunction can issue only to preserve the status quo and that a temporary injunction should not issue where the full relief is given that could be obtained by a permanent injunction.

Paragraph 124 of said Act provides:

''It is unlawful for any person to drive or move or for the owner to cause or knowingly permit to be driven or moved on any highway any vehicle or vehicles of a size or weight exceeding the limitations stated in this article . . . .''

Paragraph 131 (a) of said Act provides:

''No vehicle or combination of vehicles equipped with pneumatic tires shall be *operated* . . . *upon* the highways of this state when the gross weight on the road surface through any axle thereof exceeds 16,000 pounds; . . . .'' (Italics ours.)

Then follow the various maximum weight provisions of the various classes of vehicles.

It seems to be conceded that plaintiffs' operations will violate these weight limitations.

Paragraph 133 (a) provides:

"When in its judgment an emergency exists, . . . local authorities with respect to highways under their jurisdiction may, in their discretion, upon application in writing and good cause being shown therefor, issue a special permit in writing authorizing the applicant to operate or move a vehicle or combination of vehicles of a size or weight of vehicle or load exceeding the maximum specified in this Act or otherwise not in conformity with the provisions of this Act upon any highway under the jurisdiction of the party granting such permit and for the maintenance of which said party is responsible."

Appellees' argument is that the quoted sections of said Act are not applicable to them. They contend they are abutting owners who own the fee in the highways subject only to the public easement of travel; that they have the absolute right to cross the highways for ingress and egress to adjacent property owned by them subject only to their duty not to interfere unduly with the easement; that the statute in question was intended to apply to travel along and on the highway rather than across the highway; that the highway is not to be used by them but is rather an obstacle to their business; that the appellant, township highway commissioner, is not a local authority under the Act and has no power to grant said permit. Finally they contend that if the Act is construed as argued by appellant it would be unconstitutional as to them.

█ It appears from the allegations of the complaint that at the time of the filing of the suit the plaintiffs had not then commenced operations in the northwest quadrant. On the contrary, the complaint stated that they were about to commence the mining of

the coal in this section. It also appears from the complaint that this is not the type of a case where equity is asked to exercise its ancillary jurisdiction by way of injunction to preserve the subject matter of the litigation nor is it a type of case where the plaintiffs charge that some public official or body is effecting a confiscation of their property in violation of the constitution. See *Peoples Gas Light & Coke Co. v. Slattery,* 287 Ill. App. 379. Thus the instant complaint comes within the type governed by the fundamental rule pertaining to the granting of temporary injunctions, namely, that the purpose of a temporary injunction or restraining order is the preservation of the status quo. *Nestor Johnson Mfg. Co. v. Goldblatt,* 371 Ill. 570; *Almon v. American Carloading Corp.,* 380 Ill. 524; *Schuler v. Wolf,* 372 Ill. 386; *Baird v. Community High School Dist. No. 168,* 304 Ill. 526, 529; *People v. Standidge,* 333 Ill. 361, 365; *Dunne v. County of Rock Island,* 288 Ill. 359, 362; *Cassidy v. Triebel,* 337 Ill. App. 117; *Peoples Gas Light & Coke Co. v. Cook Lumber Terminal Co.,* 256 Ill. App. 357; 43 C. J. S., Injunctions, pars. 8 and 17; 28 Am. Jur., Injunctions, par. 12. In 43 C. J. S., *supra,* at page 428, status quo is defined as follows: ''The status quo which will be preserved by a preliminary injunction is the last, actual, peaceable, noncontested status which preceded the pending controversy.'' The necessity of the temporary injunction is usually made apparent by allegations showing that a *change* in the status would cause irreparable injury.

In the petition for rehearing plaintiffs strenuously insist that the test of ''preservation of status quo'' is not the law in this State with regard to temporary injunctions. In support of this position they have cited numerous cases from other jurisdictions and four Illinois cases. These are in addition to the *Peoples*

*Gas Light & Coke Co. v. Slattery, supra; Lee v. Hansberry,* 291 Ill. App. 517; *Quinn v. Fountain Inn,* 218 Ill. App. 260; *City of Rock Island v. Central Union Tel. Co.,* 132 Ill. App. 248; *Baldassano v. Accettura,* 336 Ill. App. 445.

In *Lee v. Hansberry* the Appellate Court affirmed the issuance of a temporary injunction which restrained violations of a restrictive covenant and which required that certain property occupied by them be vacated by the defendants. The occupancy referred to not only violated the restrictive covenant but another court had already found that the restrictive covenant was a valid covenant and the defendants had notice of such finding. Therefor, the occupancy enjoined was a contested status and the court's order simply preserved the ''actual, peaceable, uncontested status.''

To the same effect is *Quinn v. Fountain Inn,* 218 Ill. App. 260, where the allegations of the bill clearly show the defendants' possession was an interruption of the prior possession of the complainant to which the latter was entitled.

In the *City of Rock Island v. Central Union Tel. Co.,* 132 Ill. App. 248, the injunction provided in part that the city be enjoined from interfering with appellee in erecting and maintaining new poles and wires upon the streets and alleys of the city. The court found that for many years there had been a valid contract between the city and the company under which the company had been previously erecting and maintaining new poles and wires to serve its new customers. The city claimed the contract was no longer valid. The injunction however preserved the last peaceable, uncontested status.

In *Baldassano v. Accettura,* 336 Ill. App. 445, the plaintiffs had been using a certain trade-mark and trade name. The defendants, without any authority

from the plaintiffs, started to use a trade name that was quite similar. The court enjoined the defendants from continuing to use the trade name and the injunction in effect prevented the continuance of the display of signs bearing such name and to that extent might be said to be mandatory. Here again, however, the force and effect of the temporary injunction was to preserve the last actual, peaceable, uncontested status.

When the Illinois cases are examined in the light of the definition of "status quo" hereinbefore set out we are convinced that we have stated the true fundamental rule applicable to the case at bar. The status quo when thus defined may mean a condition of rest or a condition of action (*City of Rock Island v. Central Union Tel. Co., supra*). Depending upon the facts and circumstances of each case. Plaintiffs point out that many of the citations to Supreme Court opinions that we have used contain dicta only on this question. This is necessarily true for the reason that the Practice Acts have provided that the judgment of the Appellate Court in this type of a case shall be final. It seems to us significant, however, that in all of the cited Supreme Court cases, commencing in 288 Ill. and up to and including 380 Ill., the Supreme Court has in every case cited said that the office of a temporary injunction is to preserve the status until a final hearing.

██ The plaintiffs argue that this court on appeal should determine only whether or not there is reasonable probability of sustaining the ultimate relief sought. This is a true standard but is predicated upon the supposition that the appeal is from an order which preserves the existing status. This is illustrated in the case of *Schuler v. Wolf, supra,* at page 389, where the following language is used: "On the application for a temporary injunction, or a motion to dissolve, it is only necessary that the party in whose favor the

restraining order is sought show, in the statement of his case on the merits, that he raises a fair question as to the existence of his rights. He must claim and satisfactorily show to the court that the matter out of which his asserted rights arise *should be preserved and held in statu quo* until the cause can be disposed of on its merits.'' (Emphasis ours.)

For the reasons stated, the petition for rehearing is denied and the cause is reversed and remanded with directions to the lower court to set aside the order granting the temporary injunction.

*Reversed and remanded.*

CULBERTSON and SCHEINEMAN, JJ., concur.