**Emil Hebenstreit, et al., Plaintiffs-Appellees, v. Consolidated Coal Company, Defendant-Appellant, and Wabash Drilling Company, Defendant.**

### Term No. 54-O-8.

Opinion filed November 10, 1954. Rehearing denied December 16, 1954. Released for publication December 17, 1954.

WALKER & WILLIAMS, of East St. Louis, and WHAM & WHAM, of Centralia, for appellant.

RUSSELL H. CLASSEN, of Belleville, for appellees.

MR. JUSTICE BARDENS delivered the opinion of the court.

A temporary injunction order entered by the circuit court of St. Clair county restrained defendants from continuing certain drilling operations in an area protected by a residential restrictive covenant. Defendant coal company appeals from such order contending primarily that their activity was not in violation of such covenant and that plaintiffs' complaint failed to state a cause of action.

The evidence revealed that about 40 years ago the defendant coal company mined coal underlying the

surface area which was subsequently platted and developed as Oak Hills Subdivision. The mine workings had been abandoned and the mine shafts sealed for over 20 years. Consolidated Coal Company is also presently defending a separate action at law pending in the circuit court of St. Clair county brought by the plaintiffs in the injunction action who are residents of the subdivision, seeking substantial damages for injury to their property said to have resulted from an alleged subsidence of the old mine workings. Defendant alleged in the damage action that there was no practical available access to the mine workings other than drilling from the surface to the abandoned workings below, and filed a motion under Rule 17 of the Rules of the Supreme Court of Illinois [Ill. Rev. Stats. 1953, ch. 110, § 259.17; Jones Ill. Stats. Ann. 105.17] for an order permitting it to go upon plaintiffs' premises and make necessary soil tests to obtain facts as to the alleged subsidence. This motion was denied. Thereafter the company purchased Lot 54 in the subdivision and commenced a drilling operation designed to penetrate to the abandoned workings 225 feet below to determine whether there were fractures in the subsoil and whether a soil subsidence had occurred. The company's proof showed that soil experts could ascertain from core samples of the soil whether there was a subsurface soil movement and if so the causes thereof. The drilling was under the supervision of a specialist in soil mechanics and was alleged to be of a type not uncommon even in residential areas where knowledge of the soil substrata is desired before building operations are started.

The first drilling operation continued for 17 days in October-November 1953, and was abandoned as unsuccessful. A second hole was started in December but after two or three days the plaintiffs obtained a temporary injunction without notice restraining further

drilling. Defendant's motion to dissolve this injunction was granted in March 1954. Thereafter, on April 26, 1954, a third drilling operation was started. This drilling was stopped 2½ days later by the temporary injunction order here appealed from, which order was entered after notice and hearing of evidence for several days.

Plaintiffs contended that such drilling violated a certain building restriction applying to all lots in the subdivision, which covenant was as follows:

"a. The lot (Lot 54) hereby being conveyed is restricted to the construction of a one family dwelling house or multiple family building to be used for dwelling purposes only.

"b. No sewage disposal plant shall be constructed so that any of the overflow will reach the surface of the earth, and all lots must be kept clean of all garbage, rubbish or refuse of any kind.

"c. Each and all the restrictions and covenants herein set out shall run with the land herein being conveyed and shall be binding upon the grantees and their heirs, administrators, executors, successors and assigns of the grantees herein.

"d. Each and all of the restrictions and covenants herein contained shall be for the benefit of the grantors and their successors in title and assigns and any and all of said restrictions and covenants may be enforced either in law or in equity, by any one or any number or all of the persons who may from time to time be the owner or owners of lots in 'Oak Hills Annex.' "

They also contended that the drilling was noisy, unsightly and disturbing and constituted a nuisance. This

contention was supported with testimony on the part of the residents in the subdivision that the constant hammering of the trip hammer during working hours together with all the noise and disorder of the operation have made their homes and the area in general disagreeable and unpleasant as places of abode.

It appears from the evidence that the drill rig is attached to a truck and stands approximately 28 feet high. The drilling process in this case consisted of driving a pipe or casing into the ground through the loose subsoil for a distance of 95 feet. This casing was driven into the ground with a 350-pound trip hammer. The hole was then drilled with a rotary drill driven by a 24-horsepower gas engine; another gas engine pumped water to the diamond drill head to keep it from getting too hot. Testimony as to the noise these engines made varied, but it appeared to be somewhat louder than a power lawn mower but less than a cement mixer or bulldozer. At the time of the hearing, testimony on defendant's behalf indicated that they had stopped driving the casing at 95 feet, and that the drill head at that time was down to 182 feet, within 32 feet of the old mine workings where the drilling operation would cease. The drilling to this point had taken 3½ days. For the first two days of the third drilling operation the water after being used was permitted to run off the lot carrying bits of rock and clay onto the surrounding property. At the time of the hearing, however, defendant, was keeping the water in an 8-foot by 4-foot pool by the drill and was carefully recirculating it so as to avoid damaging surrounding property. The plaintiffs introduced testimony of other disturbing and annoying aspects of the drilling operation in support of their charge of nuisance which conditions defendant contended could and would be avoided in finishing the work. The temporary injunction ordered to issue by

the trial court on May 1, 1954, restrained defendants from continuing the drilling operation and from

"continuing a nuisance by permitting water and foreign impurities such as clay, rock, etc., from running over public streets in the Subdivision, over the premises of plaintiffs' and lot owners in the subdivision and are further temporarily enjoined from committing a nuisance of usual (sic) and exorbitant noises in the form of pounding, banging of machinery and running of engines in connection with drilling operations which are obnoxious to the public."

At the time this temporary injunction was issued, the lower court was confronted with the following: The pleadings were not settled; the defendant was continuing to drill and probably would complete its operations before the pleadings were concluded and final hearing had; and the case was one of first impression. While many cases involving restrictive covenants have been published in the court reports, our search has revealed no decision analogous to the case at bar. All of the cases examined have dealt with erection, construction or planting of a more or less permanent thing as distinguished from a temporary violation of the literal wording of the covenant.

In this case, the defendant admits that its activities have nothing to do with a residential use of the lot. Under such circumstances the chancellor was justified in preserving the status quo until full hearing could be had upon the defendant's motion to dismiss, until further pleadings had been ruled upon, and, if necessary, until a final hearing could be had.

██ Defendant insists that a temporary injunction should be issued only where the complaint shows on its face a clear right to relief and relies upon *Stenzel v. Yates*, 342 Ill. App. 435, 440, 96 N.E.2d 813; *Skarpinski v. Veterans of Foreign Wars*; 343 Ill. App. 271, 274, 98 N.E.2d 858; and *Hope v. Hope*, 350 Ill. App. 190,

194, 112 N.E.2d 495. These cases deal with the granting of injunctive relief based solely on the complaint, no notice having been given or hearing had. Here the chancellor conducted a hearing on factual issues that raised a debatable question of law of first impression as to the scope of the restrictive covenant. If he felt, in his discretion, that the status quo should be preserved for further proceedings and research, we cannot find an abuse of that discretion. Especially is this true in the absence of a showing by the defendant that the delay by reason of the temporary injunction would occasion serious injury to anyone. In *Scholz v. Barbee,* 344 Ill. App. 630, 101 N.E.2d 845, the court said:

"As to the question whether or not the complaint must state a cause of action before a temporary injunction may issue, it has been said that the question presented is not whether the complaint is not demurrable, but does it prima facie state a cause of action. If it does, then the court in its discretion to keep the matter in status quo may issue the temporary injunction."

The court then goes into the question of the extent to which a reviewing court will consider the sufficiency of the complaint in an appeal from a temporary injunction and concludes in line with the authorities discussed that the merits of a controversy are not brought before the reviewing court by an interlocutory appeal. See also *Nestor Johnson Mfg. Co. v. Goldblatt,* 371 Ill. 570, 574. It is the exercise of the discretion lodged in the chancellor which is reviewable. While we have doubt that defendant's activities constitute a violation of the restrictive covenant in the instant case we find no abuse of such discretion in the issuance of the temporary order under the circumstances presented.

 With respect to the allegations of common-law nuisance, the chancellor on final hearing will be required to assess the extent of the alleged injury and

whether it was substantial and unreasonable in the light of the principles announced in *Patterson v. Peabody Coal Company*, 3 Ill.App.2d 311, 122 N.E.2d 48. Any decision by this court of the merits of such allegation on this appeal would be premature.

For the reasons stated, the injunction order entered by the chancellor is affirmed and the cause remanded for further proceedings.

*Order affirmed and cause remanded for further proceedings.*

SCHEINEMAN, J., concurs.

CULBERTSON, P. J., dissents.

I am unable to concur in the majority opinion and respectfully dissent therefrom for the reason that in my opinion the drilling operations conducted by defendant in a lawful manner do not violate the restrictive covenant.