Jersey County Motor Company, Inc., an Illinois Corporation, Plaintiff-Appellee, v. Local Union No. 525, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, a Voluntary Unincorporated Association; District No. 9 of the International Association of Machinists, AFL-CIO, a Voluntary Unincorporated Association; William Otto Doty, et al., Defendants-Appellants.

Gen. No. 10,211.

Third District.

March 3, 1959.

Released for publication March 19, 1959.

Johnson, Johnson, Ducey & Dixon, of Belleville (Alan J. Dixon, of counsel), and Wiley, Craig, Armbruster, Schmidt & Wilburn, and Malcolm Bartley, all of St. Louis, Missouri (Harry Craig, of counsel) for defendants.

W. F. Hacker, and G. R. Schwarz, of Jerseyville, for plaintiff.

PRESIDING JUSTICE ROETH delivered the opinion of the court.

This is an appeal from a decree permanently enjoining defendants from picketing the business and premises of the plaintiff. The basic facts are not in dispute.

The plaintiff is an Illinois corporation engaged in the business of selling new and used automobiles, farm equipment, parts and accessories, at Jerseyville, Illinois. During 1957 it purchased new automobiles, trucks and parts from sources outside the State of Illinois of a value in excess of $200,000. These were

shipped from points outside the State of Illinois to plaintiff in the State of Illinois.

The two defendant unions are voluntary, unincorporated labor organizations. Defendant Jones is a member of the Teamsters Union, Smith a member of the Machinists, Shipley a member of the Machinists, and they were paid for picketing plaintiff's premises by the defendant unions. Defendants Doty and McDuffy are officers and representatives of the Teamsters Union and defendant Van Bibber is an officer and representative of the Machinists Union.

Plaintiff has twelve or more employees working for it and none of them are members of or represented by any union. Nor have any of them at any time joined either defendant unions or authorized either union to act as their collective bargaining representative. On the contrary, it was stipulated that were they called to testify, they would testify that they do not desire to join or be represented by either union.

On October 22, 1957, the defendant unions addressed letters to plaintiff's employees inviting them to join so that they, as member-employees, could benefit from what the unions stated would be "advantages." The letters stated that the unions respected their rights and would refrain from any improper pressure or unlawful restraint, coercion or interference with their rights. None of the employees accepted the invitation to join.

On October 22, 1957, the defendant unions addressed a letter to the plaintiff, advising of their intention to picket its premises and setting forth the reasons why they intended to picket and the objects and purposes of that undertaking. The letter stated that they did not represent or claim to represent any of plaintiff's employees, that they were not seeking any labor contract from plaintiff, that they did not intend to unlawfully interfere with, coerce, or threaten either

40

plaintiff or its employees, and that their purpose in picketing would be to lawfully induce, if possible, plaintiff's employees to join their unions. The letter is substantially the same as that set out in Simmons v. Retail Clerks International Association, 5 Ill.App.2d 429, 125 N.E.2d 700.

Thereafter, the unions did establish a picket line around and about the plaintiff's premises and maintained it continuously until enjoined by the Trial Court. The Teamsters picketed with signs reading "Employees of Jersey County Motor Company join our union for better job security, wages and conditions. We are making no appeal except to employees to join our union, Teamsters Local 525." The Machinists picketed with an umbrella reading "Don't be non-union. Organize for security. Employees of Jersey County Motors, Inc., Join Machinists District No. 9 today. Affiliated with I. A. of M.—AFL-CIO." *The picketing was carried on in a peaceful manner and was not en masse.*

It appears that since the picketing began plaintiff has suffered a decrease in business, the hours of work of the employees have been reduced and that employees of various firms supplying plaintiff with supplies and wares refused to cross the picket line. With regard to the latter it appears from the testimony of defendant Earl Jones that in November, 1957, a load of Dodge trucks stopped at the plaintiff company for delivery; that he told the driver, in response to the driver's question, that he was a member of the Teamsters Union and they were picketing to organize the employees of the plaintiff. The trucks were not delivered. Rufford Smith, another of the defendants, who walked the picket line, said they were picketing to get the mechanics of plaintiff to sign up with the union. The president of plaintiff testified that no cars, trucks or freight had been delivered to plaintiff's premises

since the picket line was established but he admitted that such new cars, trucks, parts and freight as plaintiff ordered were being secured in ways not disclosed by the witness.

No application was ever made to the National Labor Relations Board to take jurisdiction of this case.

Upon the foregoing the trial court found that it had jurisdiction of the cause and that the picketing complained of was for the purpose of coercing, intimidating and inducing the employer through economic pressure to interfere with his employees in their right to join or refuse to join the defendant unions, and thereupon issued the permanent injunction.

To sustain this decree, plaintiff contends that the picketing activities of defendants violate the public policy of the State of Illinois and can therefore be enjoined by Illinois courts. Defendants answer this contention by insisting (1) that their picketing activities were not violative of the public policy of Illinois *or* (2) if considered to be such they constitute an unfair labor practice, *and in either event* the processes of the National Labor Relations Board are the exclusive means for the prevention and correction of said practices and the courts of Illinois are without jurisdiction in the matter. This latter contention of defendants has come to be known as the doctrine of preemption.

██ In the years since the enactment of the original National Labor Relations Act, 49 Stat. 449, Ch. 372, and its extensive amendment by the Labor Management Act, 61 Stat. 136, 29 U. S. C. 151 et seq., the law governing the question of the extent to which state power to enjoin peaceful picketing is limited by the federal labor relations statutes, has taken form in the decisions of the United States Supreme Court. The rule is now firmly established, that the effect of the federal labor relations statutes has been to bar the

42

state from enjoining peaceful picketing which affects interstate commerce. Allen-Bradley Local No. 1111, United Electrical Radio and Machine Workers of America v. Wisconsin Employment Relations Board (1942), 315 U. S. 740, 86 L. Ed. 1154, 62 S. Ct. 820; International Union of United Automobile, Aircraft and Agricultural Implement Workers of America C. I. O. v. O'Brien (1950), 339 U. S. 454, 94 L. Ed. 978, 70 S. Ct. 781; Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America Division 998 v. Wisconsin Employment Relations Board (1951), 340 U. S. 383, 95 L. Ed. 364, 71 S. Ct. 359; Garner v. Teamsters, Chauffeurs & Helpers Local Union No. 776 (1953), 346 U. S. 485, 98 L. Ed. 228, 74 S. Ct. 161; Weber v. Anheuser-Busch, Inc. (1955), 348 U. S. 468, 99 L. Ed. 546, 75 S. Ct. 480; Amalgamated Clothing Workers of America v. Richman Bros. (1955), 348 U. S. 511, 99 L. Ed. 600, 75 S. Ct. 452; Local Union No. 25 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America v. New York, New Haven & Hartford R. Co. (1956), 350 U. S. 155, 100 L. Ed. 166, 76 S. Ct. 227; United Mine Workers of America v. Arkansas Oak Flooring Co. (1956), 351 U. S. 62, 100 L. Ed. 941, 76 S. Ct. 559; Retail Clerks International Ass'n, Local No. 560 v. J. J. Newberry Co. (1957), 352 U. S. 987, 1 L.Ed.2d 367, 77 S. Ct. 386; Amalgamated Meat Cutters & Butcher Workmen of North America, Local No. 427, AFL v. Fairlawn Meats, Inc. (1957), 353 U. S. 20, 1 L.Ed.2d 613, 77 S. Ct. 604; San Diego Building Trades Council v. Garmon (1957), 353 U. S. 26, 1 L.Ed.2d 618, 77 S. Ct. 607; Youngdahl v. Rainfair, Inc. (1957), 355 U. S. 131, 2 L.Ed.2d 151, 78 S. Ct. 206. In addition to the foregoing cases in which opinions were rendered, the same conclusion was reached in a number of cases decided by the United States Supreme Court in memorandum decisions. Thus

the United States Supreme Court, with varying factual situations before it, has universally held that Congress has pre-empted the field, and that, except where mass picketing or violence are present, the National Labor Relations Board has exclusive jurisdiction. As noted, one exception to this rule has been recognized by the United States Supreme Court, namely, picketing en masse or picketing attended by violence of one kind or another. In such cases the police power of the State has been recognized and it has been held that there is nothing in the Labor Management Act to indicate that Congress intended to pre-empt the exercise of police power by state courts. United Auto, Aircraft & Agricultural Implement Workers of America v. Wisconsin Employment Relations Board, 351 U. S. 266, 100 L. Ed. 1162, 76 S. Ct. 794; Allen-Bradley Local No. 1111, United Electrical, Radio & Machine Workers of America v. Wisconsin Employment Relations Board, 315 U. S. 740, 86 L. Ed. 1154, 62 S. Ct. 820; International Union U. A. W., A. F. L., Local 232 v. Wisconsin Employment Relations Board, 336 U. S. 245, 93 L. Ed. 651, 69 S. Ct. 516.

 The most recent pronouncement of the United States Supreme Court on the subject will be found in its opinion filed January 12, 1959, in the case of Hotel Employees Union, Local No. 255, et al. v. Sax Enterprises, Inc., et al., 3 L.Ed.2d 289, 79 S. Ct. 273. In this case it was held that the exclusive jurisdiction of the National Labor Relations Board over conduct which is either *protected* or *prohibited* under the National Labor Relations Act, deprives a state court of power to enjoin peaceful organizational picketing of interstate employees, regardless of whether the National Labor Relations Board would decline or has declined to exercise jurisdiction. It was further said that, in the absence of violence sufficient to justify the exercise of state police power, *state courts are without jurisdiction*

44

to enjoin unions from engaging in organizational picketing of businesses affecting interstate commerce. In short—whether picketing is considered recognitional or organizational, whether the activities of a union are condemned by the federal statute as an unfair labor practice or by it protected as permissible conduct—state courts may not exercise jurisdiction.

Plaintiff relies upon Bitzer Motor Co. v. Local 604, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers, et al., 349 Ill. App. 283, 110 N.E.2d 674; Simmons v. Retail Clerks International Association, 5 Ill.App.2d 429, 125 N.E.2d 700, and International Brotherhood of Teamsters, Local 695 v. Vogt, Inc., 354 U. S. 284, 1 L.Ed.2d 1347, as stating a different rule. It is to be noted that the Bitzer case, supra, was decided prior to the time that the law had become crystallized to the extent that it now is. Aside from this, however, it appears that the doctrine of pre-emption was not raised or passed upon in the Bitzer case, supra. We have examined the abstracts and briefs in the Simmons case, supra, and we find that the doctrine of pre-emption was likewise not raised in that case. The only question involved in both cases, was whether the act of a state court in enjoining peaceful organizational picketing, violated the Fourteenth Amendment to the Constitution of the United States, which guarantees free speech. The basic holdings of these cases is that a state has the right to curtail free speech when, in the exercise of its authority to declare and establish its public policy, either legislatively or judicially, it determines that such curtailment is necessary to protect the public interest and property rights. The Illinois cases, supra, find support in International Brotherhood of Teamsters v. Vogt, Inc., supra, where this, and only this question was decided. These cases have no application to situations where interstate commerce is affected and the doctrine of pre-emption is raised.

45

■ We conclude that the Circuit Court of Jersey County was without jurisdiction to enter the decree appealed from. When it appeared that plaintiff's business was one affecting interstate commerce and that defendants were insisting upon the doctrine of preemption, the Circuit Court should have dismissed the complaint for want of equity, in the absence of any facts giving rise to the exercise of the police power by the State.

Accordingly the decree of the Circuit Court of Jersey County will be reversed.

Reversed.

REYNOLDS and CARROLL, JJ., concur.