Huerbinger Drug Company of Glenview, an Illinois Corporation, Niles Drugs, Inc., an Illinois Corporation, and Phil Sacks, d/b/a Phil Sacks Drugs, Plaintiffs-Appellees, v. Topp's of Niles, Inc., an Illinois Corporation, and Darby Sales Company, an Illinois Corporation, Defendants.
On Appeal of Darby Sales Company, an Illinois Corporation, Defendant-Appellant.

Gen. No. 48,222.

First District, First Division.

November 30, 1960.

Rehearing denied and opinion modified December 22, 1960.

Block and Solomon, of Chicago (Milton H. Solomon, Irving L. Block, and Kenneth H. Denberg, of counsel) for appellant.

Robert Marks and William S. Kaplan, of Chicago (Marks, Marks & Kaplan, Herman S. Waller, of counsel) for appellees.

MR. PRESIDING JUSTICE KILEY delivered the opinion of the court.

Plaintiffs, retail druggists, seek a permanent injunction to restrain defendants, also retail druggists, from violation of the Illinois Fair Trade Act. Ill. Rev. Stat., ch. 121½, secs. 188–190 (1959). They were denied relief as to Topp's of Niles, Inc., but the Chancellor granted a temporary injunction restraining Darby Sales Company from selling certain drug products below Fair Trade prices. Darby has appealed from the order for the temporary injunction.

Plaintiffs operate drug stores which sell products bearing the trade names of certain manufacturers at Fair Trade prices. The Darby drug store sells similar products at discount. The temporary injunction permits it to sell at discount prices the pertinent products on hand or on order but prohibits its advertising, offering for sale or selling any additional similar products at discount prices.

This is the first time in Illinois that a retailer has sought to enjoin another retailer from violating the Act, but defendant does not challenge the plaintiff's

337

right to sue it. The question is whether the Chancellor abused his discretion in issuing the injunction.

We see no need of discussing the arguments with respect to the fact that when the order was entered there was on file a verified answer setting up matters in defense and that no reply had been filed. We think that there is no question of the Chancellor's right to grant a temporary injunction even in the face of Darby's verified answer if in a reasonable exercise of his discretion he saw the necessity of preserving the status quo or preventing irreparable injury. 43 C.J.S., Injunctions, § 17 (1945). We conclude that the posture of the pleadings did not preclude the Chancellor's exercise of discretion.

Darby argues, however, that the instant injunction upset the status quo instead of retaining it. It claims that before the order was entered it was selling at discount prices and afterward was restrained from doing so. Plaintiffs, however, claim that Darby's answer admits violation of the Fair Trade Act, and that the last lawful status quo before the violation is the one that must be maintained. Darby's argument finds support in Kabureck v. Stookey, 1 Ill.App.2d 181, 116 N.E.2d 900 (1954); Lee v. Hansberry, 291 Ill. App. 517, 10 N.E.2d 406 (1937); Quinn v. The Fountain Inn, 218 Ill. App. 260 (1920). But in those cases defendants who had taken advantage by wrongful conduct were seeking to have their wrongfully achieved status quo maintained. That is not true here. The Chancellor was not required to find that Darby was a wrongdoer because of its admitted price cutting, since the proof might show it was justified in selling at discount. So we cannot say that the status quo in the instant case is necessarily that status before defendant began to sell the goods at a discount.

The Chancellor sought to protect both plaintiffs and Darby. He restrained Darby from selling the commodities in question except those on hand or on order

at the time of the injunction. This he thought would minimize the harm to the plaintiffs, to Darby, to the manufacturers and to the public. He further tried to minimize the harm to Darby by requiring plaintiffs to furnish a $10,000 bond to cover any Darby losses prior to ultimate hearing.

█ The extraordinary remedy of temporary injunction restraining freedom must be carefully granted and unless the need is reasonably clear, the writ should not be issued. When the Chancellor entered the order, there was before him a novel proceeding with retailers seeking to enjoin another retailer under the Fair Trade Act; an answer setting up the defense of abandonment with an unresolved legal question arising as to whether a defense valid against the manufacturers is valid against the plaintiffs; no showing of an emergency because the course of the case with respect to pleadings and the hearing had been unhurried; and the probability that the status quo was being upset rather than maintained. There also was an apparent inconsistency in the restraint since there was a finding of irreparable damage, but Darby was permitted to indulge the alleged unlawful conduct for several weeks.

█ In view of these circumstances we think the Chancellor should have refused to grant the injunction and should have followed his original intention to bring the case to issue and to an early plenary hearing. This would have avoided the compromise order.

For the reasons given we conclude that justice, equity and the development of law would be better achieved by reversing the order and remanding the cause with directions to proceed with "deliberate speed" to a plenary hearing.

Reversed and remanded with directions.

BURMAN and MURPHY, JJ., concur.